Jane DOE, Plaintiff,

v.

BOARD OF EDUCATION OF HONONE-GAH COMMUNITY HIGH SCHOOL DISTRICT # 207, et al., Defendants.

No. 93 C 20006.

United States District Court, N.D. Illinois, W.D.

Sept. 30, 1993.

---

Frank A. Perrecone, Lawrence J. Ferolie & Associates, Ltd., Rockford, IL, for plaintiff.

Robert H. Ellch, Scariano, Kula, Ellch & Himes Chtd., Todd K. Hayden, Chicago Heights, IL, Harold L. Turner, Turner & McGraw, Joseph G. McGraw, Turner & McGraw, Rockford, IL, David W. McArdle, Zukowski, Rogers, Flood & McArdle, Crystal Lake, IL, William W. Kurnik, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, IL, Michael J. Duggan, Klein, Thorpe & Jenkins, Ltd., Paul E. Lehner, Schuyler, Roche & Zwirner, Chicago, IL, Thomas E. Greenwald, Oliver, Close, Worden & Greenwald, Rockford, IL, Jerome A. Vinkler, Connelly, Mustes, Palmer & Schroeder, Geneva, IL, for defendants.

## ORDER

REINHARD, District Judge.

### INTRODUCTION

Plaintiff, Jane Doe, filed a fourth amended, fourteen-count complaint against various members of the Hononegah Community High School District 207 school board, the school district and David Davison in his individual and official capacity as principal, assistant superintendent and superintendent, Ter-

ry Spurlock in his individual and official capacity as assistant principal and principal, Paul Kern in his individual and official capacity as superintendent,[1] Kerry Muldowney, Robert Maloney, Lucy Reardon–Vaubel and Marion Fiorillo in their individual capacities as counselors. The complaint essentially seeks money damages and attorneys fees (42 U.S.C. § 1988) for alleged deprivations of plaintiff's due process rights under the fourteenth amendment (42 U.S.C. § 1983) and for obstruction of justice and denial of equal protection (42 U.S.C. §§ 1985(2), (3)). Jurisdiction is based on 28 U.S.C. § 1343(a)(3). Defendants moved to dismiss the entire fourth amended complaint.

### FACTS

The fourth amended complaint alleges the following. Plaintiff, then a minor, female student at the high school, was sexually abused on more than one occasion by a teacher during the 1985–86 and 1986–87 school years. The last such abuse occurred in 1986.[2]

The teacher was employed by the school district from 1981 to 1991. During the 1981–82 school year, the three school administrators (Davison, Kern and Spurlock) knew of sexual misconduct committed by the teacher against an eighteen-year-old female student. Davison cited the teacher in writing for inappropriate sexual behavior and warned him that similar future action would be cause for his discharge.

During the 1983–84 school year, the teacher sexually abused a minor female student. An unidentified counselor, who reasonably suspected that the teacher was involved in sexual abuse, confronted the student, but she did not admit the abuse. Also in 1983–84, another minor female student was abused by the teacher, and another teacher knew of the incident. In 1984–85, a minor student reported to a high school teacher that she was a victim of multiple instances of sexual abuse by the teacher during that school year. The high school teacher reported this information to Kern but no action was taken against the

teacher. Furthermore, in 1984–85, Davison, Kern and Spurlock knew of multiple charges of sexual misconduct during that year involving the teacher and yet another minor, female student. A counselor and the victim's mother reported these charges to Kern, Davison and Spurlock, and the counselor advised Kern that he believed the charges were true. No action was taken against the teacher.

In 1987–88, a parent of a minor, female student told Kern that the teacher was touching and harassing his daughter. The student also told Kern about the sexual misconduct, and Kern told the student he was surprised by this type of report and had never before heard of similar incidents involving the teacher. During the 1990–91 school year, another minor, female student told a counselor she was the victim of sexual misconduct by the teacher that year. Despite urging by the counselor to file a complaint, the student refused to do so. In March 1991, the teacher was seen peering into the girls' locker room while minor, female students were present. Davison and Spurlock knew of this yet took no action against the teacher. In June 1991, Davison told a newspaper reporter that he had no knowledge of any allegations of sexual misconduct against the teacher.

Following the first five alleged instances of abuse, the teacher's conduct continued unchecked by defendants. This fostered a climate to flourish in which female students were sexually abused by the teacher. The teacher sexually abused at least thirteen other minor, female students until 1991.

The school board delegated to Kern and other school administrators the responsibility of investigating all charges of teacher sexual misconduct with minor students. The school district, with the ratification or acquiescence of the school board, delegated to Kern authority to make final decisions on its behalf concerning charges of teacher sexual misconduct with students. Furthermore, the school board knew in 1985 of the multiple acts of sexual abuse by the teacher during the 1984–85 school year and ratified or acquiesced in

---

1. Paul Kern is deceased, and the administrator of his estate is the actual defendant.

2. The abuse consisted of the fondling of plaintiff's breasts, kissing and oral sex.

Kern's investigation and determination that those charges were untrue. Prior to the misconduct directed at plaintiff, and despite the fact that another teacher, at least three or four guidance counselors, the assistant principal, principal, superintendent and school board all had reasonable cause to believe that the teacher had committed numerous acts of sexual abuse against minor, female students over a long period of time, no information was ever reported to the Illinois Department of Children and Family Services as required by the Abused and Neglected Child Reporting Act, see 325 ILCS 5/1 et seq. (1993) (formerly Ill.Rev.Stat., ch. 23, par. 2051 et seq. (1991)), and little, if anything, was done to stop the teacher. Failing to report instances of suspected teacher sexual misconduct against minor students was the practice and standard operating procedure of the school district.

Counts I, II, and III set forth specific allegations against Davison, Spurlock and Kern's estate respectively. It is alleged that Davison and Spurlock "fostered a climate to flourish in which female students were sexually abused" in that they: (1) failed to train teachers, counselors and school personnel to report suspected sexual abuse to the Illinois Department of Children and Family Services (DCFS); (2) purposely failed to report suspected minor sexual abuse to DCFS; (3) failed to invoke disciplinary proceedings against the teacher; (4) regarding certain occurrences, ratified or acquiesced in Kern's actions of discouraging the victims, family members or confidants from pursuing sexual misconduct charges by siding with the teacher, suggesting the victims were fantasizing or fabricating, and suggesting the victims would be discredited or humiliated if the charges were made public; (5) ratified or acquiesced in Kern's failure to undertake discharge proceedings pursuant to Illinois law or to recommend such to the school board; (6) concealed knowledge of the teacher's past sexual misconduct with another student from one of the victims and her mother; (7) ratified or acquiesced in Kern's concealment of the same information referred to in (6); (8) concealed knowledge from the same victim and her mother that the teacher had previously received a written warning for inappropriate behavior; (9) concealed knowledge from the same victim and her mother of the existence of the "Abused and Neglected Child Reporting Act;" and (10) ratified or acquiesced in Kern's concealment of the "Abused and Neglected Child Reporting Act."

As to Kern, it is alleged that he fostered a climate to flourish in which female students were sexually abused by failing to report suspected minor sexual abuse to DCFS, discouraging the victim, family members or confidants from pursuing sexual misconduct charges, failing to undertake discharge proceedings or recommending the school board do so, concealing knowledge of the teacher's past sexual misconduct and charges of sexual misconduct, concealing the fact that the teacher had been previously warned in writing regarding inappropriate behavior, misleading or deceiving a victim and her mother that the teacher would be disciplined and that action would be taken to prevent his future misconduct, concealing the existence of the abuse and neglect reporting act, lying to a victim that he had never heard of similar allegations about the teacher and failing to train teachers, counselors and school personnel to report suspected sexual abuse to DCFS.

The complaint further alleges as to Davison and Spurlock that their reckless or deliberate indifference in disregarding state law by refusing to report the teacher to DCFS and refusing to require counselors to do so violated plaintiff's due process rights to have state law enforced for her protection. It further alleges that these two defendants violated her due process rights to have an investigation conducted by law enforcement and that their failure to intervene and protect plaintiff, when they knew or should have known that Kern took no effective action to stop the teacher, created a danger to plaintiff and increased her risk of harm which ultimately led to plaintiff being victimized by the teacher. Regarding Kern, the complaint asserts by refusing to report the teacher to DCFS and by refusing to require counselors to do so, Kern denied plaintiff her due process right to have state law enforced for her protection and to have an investigation conducted. It is further alleged that Kern's

reckless or deliberate indifference created a danger to plaintiff that increased her risk of harm which ultimately led to plaintiff being abused.

Count IV, against the school district and various school board members, alleges that the school district's practice, acquiesced in or ratified by the school board, was not to report instances, based on reasonable belief, of minor student sexual abuse by teachers. Such practice "fostered a climate to flourish" in which female students, including plaintiff, were sexually abused by the teacher. Count IV further alleges other acts or omissions by the school district and school board that created a climate conducive to sexual abuse.

Counts V, VI and VII allege that Kern, Davison and Spurlock, respectively, violated plaintiff's rights to free and unobstructed access to the courts. Specifically, each count alleges that plaintiff was injured in that: (1) with the passage of time witnesses' memories will be affected; (2) she will be required to respond to motions to dismiss because of lack of timeliness; (3) she will be hindered by motions seeking to stay discovery, which will prevent her from ascertaining if she has sued all potential defendants prior to the two year discovery rule statute of limitations or other actions of defendants which would support her claims as to the statute of limitations; (4) she suffers mental and emotional distress, humiliation, loss of reputation and loss of enjoyment of life; (5) she has been deprived of evidence by Kern's death and (6) a delay of five to six years passed before plaintiff was able to recognize her causes of action.

Counts VIII (Kern), IX (Davison) and X (Spurlock) allege that each defendant conspired with the other two to conceal the teacher's conduct from state authorities, to cover up his conduct, to prevent female students, including plaintiff, from becoming aware of the unconstitutional climate, to prevent them from pursuing legal rights and remedies, and to conceal the existence of the conspiracy. It is further alleged in Counts VIII, IX and X that each of these three defendants had an express or implied agreement with the other two and with the four named counselors to disregard state law by not reporting the teacher to DCFS. In furtherance of that agreement, each defendant failed to report the teacher and failed to require the counselors to do so. As a proximate cause of the conspiracy, plaintiff was denied her rights to free and unobstructed access to the courts.

The fourth amended complaint also sets forth additional allegations common to all counts. Kern, Davison and Spurlock fraudulently concealed plaintiff's cause of action which caused a delay in plaintiff recognizing her right against all defendants to legal relief. Plaintiff did not, in the exercise of ordinary diligence, discover her causes of action against defendants because of her detrimental reliance on Kern, Davison and Spurlock who, as persons of trust, authority and in *loco parenti,* were obligated not to injure her. Alternatively, if she had tried to discover her causes of action, she would have failed because of the sophisticated cover up and concealment. Plaintiff first knew or should have known of the unconstitutional conduct of Kern, Davison and Spurlock when their conduct was reported in a July 31, 1991 newspaper and first knew or should have known of her claims against the remaining defendants on January 22, 1992, when the newspaper reported the school board's closed executive sessions.[3]

Counts XI, XII, XIII and XIV set forth allegations against school counselors Muldowney, Maloney, Reardon–Vaubel and Fiorillo, respectively. It is alleged state law and school policy required reporting suspected minor sexual abuse to DCFS. Each defendant knew or had reasonable cause to suspect that plaintiff and other female students were abused by the teacher and they did not report such knowledge to DCFS even though they knew that Davison, Spurlock and Kern took either no action or ineffective action to prevent the abuse. This conduct violated plaintiff's due process rights in that: (1) it "fostered an environment to exist" and continue in which minor female students became

---

**3.** While plaintiff has not specified in her complaint the precise nature of those newspaper reports, it appears safe to assume they related to

the instances of sexual misconduct to one degree or another as defendants have not suggested otherwise.

sexual abuse victims; (2) defendants had a duty to intervene and protect minor female students from becoming abuse victims when they (Muldowney, Maloney, Reardon–Vaubel) knew or should have that the administration, their supervisor or counselors took no action or effective action to do so or when Fiorillo knew or should have known that the administration or his subordinates took no such action or effective action; (3) their reckless or deliberate indifference, in disregarding state law by refusing to report the teacher to DCFS, violated plaintiff's due process rights to have state law enforced for her protection and to have an investigation conducted by law enforcement authorities; and (4) their reckless and deliberate indifference created a danger of and increased the risk of harm by sexual abuse.

The complaint further alleges as to these four defendants that they knowingly concealed their knowledge of the child abuse, the school environment and the actions of the school administration from law enforcement and state authorities, which resulted in a five to six year delay in plaintiff's recognizing her cause of action, a deprivation of material evidence due to Kern's death, and a loss of witnesses' memories. Additionally, each of these defendants had an express or implied agreement with Davison, Spurlock, Kern and each other to disregard state law and not report the teacher to DCFS and that each of them failed to do so in furtherance of that conspiracy. Lastly, it is alleged that they knew or should have known of her causes of actions on July 31, 1991, and that her causes of action were fraudulently concealed by these four defendants. Through the exercise of due diligence, plaintiff was unable to discover her causes of action because of her reliance on these defendants as persons of trust, authority and in *loco parentis*. Alternatively, had she tried to discover her causes of action she would have been unable to do so because of the alleged cover-up and concealment.

Finally, the fourth amended complaint contains a section captioned *"CONSTITUTIONALLY PROTECTED RIGHTS."* In this section, plaintiff alleges that under the due

process clause of the Fourteenth Amendment she had a right

"to be free from public school administrators, School Board members, counselors and teachers who under color of state law deliberately or with reckless indifference created a danger to minor female students, increased the risk of harm to minor female students or made minor female students more vulnerable to harm, when said danger or harm ultimately led to teacher molestation of students; and further, defendants had a constitutional duty to intervene and protect said students from molestation when their supervisors, superiors or co-workers took no action or no effective action to stop teacher sexual abuse.

6. Plaintiff had a constitutionally protected liberty interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to have had state law followed and enforced when either public school administrators, School Board members, counselors and teachers deliberately or with reckless indifference ignored state law which caused minor female students to become sexual abuse victims.

7. Plaintiff had constitutional rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from a public school district and School Board that under color of state law had practiced or enforced a decision which fostered a climate to flourish in which minor students were victims of sexual misconduct by a teacher.

8. Plaintiff had constitutional rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to have free and unobstructed access to the courts."

## CONTENTIONS

Defendants raise several contentions in support of their motion to dismiss. First, they maintain that the entire complaint is barred by the applicable statute of limitations. In that regard, defendants first argue that the "discovery rule" does not postpone the accrual of plaintiff's cause of action. Similarly, defendants contend that the five-

year tolling period found in section 13–215 of the Illinois Code of Civil Procedure is not applicable because plaintiff has failed to allege any affirmative acts of concealment by defendants and because plaintiff could have discovered the alleged fraudulent concealment through ordinary diligence. As to the statute of limitations defense, defendants assert that neither the doctrine of equitable tolling nor equitable estoppel applies. Second, regarding Counts V through VII, defendants posit that those counts should be dismissed because plaintiff has failed to allege any right of recovery that was thwarted by defendants' failure to affirmatively come forward with information relevant to her claims. Third, defendants contend that plaintiff's conspiracy claims in Counts VIII through X are barred by the intracorporate conspiracy doctrine because the complained of acts relate to the handling of alleged sexual abuse of students and teacher discipline, both of which are part of the business of the school board and its employees. Fourth, defendants maintain that their failure to report the sexual abuse does not rise to the level of a due process deprivation because a failure to comport with state law does not bear on the constitutional validity of their conduct.

Defendants Muldowney, Maloney, Reardon–Vaubel, and Fiorillo contend the counts of the complaint against them should be dismissed for several reasons. First, they adopt the bases for dismissal asserted by the other defendants. Second, they argue they were not part of the school administration and thus possessed neither the actual nor apparent authority to contribute to the climate conducive to sexual abuse nor the control over plaintiff's contact with the teacher. Third, they posit that school personnel have no constitutional duty to prevent sexual abuse of minor students.

Plaintiff initially responds that under the federal discovery rule her cause of action against Kern, Davison and Spurlock did not accrue until July 31, 1991, and her cause of action against the other defendants did not accrue until January 22, 1992. Alternatively, she argues that the question of when she should have known of potential claims is one of fact which precludes a motion to dismiss.

She also urges that she can maintain her claim despite her failure to bring it within the two-year statute of limitations because of either the fraudulent concealment of her cause of action or because defendants are equitably estopped from raising the defense because of their affirmative action to conceal her cause of action. She further maintains that the intracorporate conspiracy doctrine does not apply because defendants acted outside the scope of their corporate roles.

Plaintiff identifies three distinct theories of constitutional liability alleged in her fourth amended complaint. First, she asserts that she has a right under the due process clause of the Fourteenth Amendment "to be free from public school counselor's actions which create or exacerbate a danger to students of being sexually abused by a teacher or renders them more vulnerable to sexual abuse by a teacher." Second, she claims a due process right "to be free from public school counselors' actions that maintain a custom or practice which fosters a climate to flourish in which students become sexual abuse victims of a teacher." Third, she urges she has a right under the due process clause to have free access to the courts. She also contends that she had a due process right to have a state or law enforcement investigation conducted and that Davison and Spurlock had a constitutional duty to intervene.

## DISCUSSION

In reviewing a motion to dismiss, all well-pleaded allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Dimmig v. Wahl*, 983 F.2d 86, 87 (7th Cir.1993). The court will not dismiss a complaint unless it is clear there is no set of facts a plaintiff could prove consistent with the pleadings that would entitle him or her to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Murphy v. Lane*, 833 F.2d 106, 107 (7th Cir.1987).

### I. Statute of Limitations

Section 1983 actions are governed by the personal injury statute of limitations in the state where the alleged injury occurred. *Wilson v. Giesen*, 956 F.2d 738, 740

(7th Cir.1992) (citing *Wilson v. Garcia,* 471 U.S. 261, 279, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985)). In this case, the applicable limitations period is Illinois' two-year statute of limitations. *See* 735 ILCS 5/13–202 (1993) (formerly ILL.REV.STAT. ch. 110, ¶ 13–202 (1991)). However, in applying this statute of limitations, this court must also follow the Illinois tolling laws. *Wilson,* 956 F.2d at 740 (citing *Hardin v. Straub,* 490 U.S. 536, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989)). In Illinois, a person who is under the age of eighteen at the time the cause of action accrues may bring the action within two years after attaining the age of eighteen.[4] *See* 735 ILCS 5/13–211 (1993) (formerly ILL.REV.STAT. ch. 110, ¶ 13–211 (1991)).

It is apparent that plaintiff did not bring her claims within two years of reaching her eighteenth birthday. Thus, she argues that her causes of action did not accrue until June 1991 and January 1992. According to plaintiff, she then had two years to bring her claims.

■ While state law establishes the statute of limitations and any applicable tolling provisions, federal law determines the accrual of her claims. *Wilson,* 956 F.2d at 740.[5] Generally, a cause of action accrues when a plaintiff knows or has reason to know of the injury giving rise to the cause of action. *Wilson,* 956 F.2d at 740.[6] In the civil rights context, a claim accrues when a plaintiff knows or should know that her constitutional rights have been violated.[7] *Wilson,* 956 F.2d at 740; *see also Moskowitz v. Trustees of Purdue Univ.,* 5 F.3d 279, 282 – 83 (7th Cir.1993) (equitable tolling doctrine applies to age discrimination claim).

■ For purposes of defendants' motion to dismiss based on the statute of limitations, this court must discern from the fourth amended complaint whether, as a matter of law, plaintiff knew or should have known that her constitutional rights were violated at the time of the last alleged incident of sexual abuse against her while she was a minor student.[8] In that regard, the allegations established that plaintiff was sexually abused by the teacher. It is also apparent from those allegations that plaintiff knew she was sexually abused. If this were a claim against

---

4. Illinois also has a special tolling provision for victims of childhood sexual abuse. *See* 735 ILCS 5/13–202.2 (1993) (formerly ILL.REV.STAT. ch. 110, ¶ 13–202.2 (1991)). Under that provision, an action for personal injuries based on childhood sexual abuse must be commenced within two years of the date the victim discovers, or through the use of reasonable diligence, should have discovered that the childhood sexual abuse occurred and that the injury was caused by such abuse. While plaintiff's claim here is factually premised in part on childhood sexual abuse, its legal focus is the denial of her constitutional right to be free from such abuse by a public school teacher. Neither party suggests that section 13–202.2 has any applicability to this case, and this court finds it inapplicable.

5. Defendants relied in their motion to dismiss on Illinois law regarding when a cause of action accrues. In their reply to plaintiff's response to their motion to dismiss, rather than argue that Illinois law applies, they assert that under federal law plaintiff's claims accrued while she was still in high school. This court will apply federal law to the accrual issue.

6. The rule that postpones the beginning of the limitations period from the date when a plaintiff is wronged to the date when she discovers, or reasonably should discover, she has been injured is referred to as the "discovery rule." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1992).

7. While the discovery rule is traditionally given efficacy in the context of medical malpractice actions where the knowledge of injury and cause are not always readily apparent, *see e.g., United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (application of discovery rule to medical malpractice action brought under the Federal Tort Claims Act), the Seventh Circuit has expressly held that it should apply to "any plaintiff who is blamelessly ignorant of the existence or cause of his injury." *Stoleson v. United States,* 629 F.2d 1265, 1269 (7th Cir.1980); *see also DuBose v. Kansas City Southern Ry. Co.,* 729 F.2d 1026, 1030 (5th Cir.1984) (discovery rule should be applied in federal cases whenever plaintiff is not aware of and has no reasonable opportunity to discover injury and its cause); *Lavellee v. Listi,* 611 F.2d 1129, 1130–31 (5th Cir.1980) (applying discovery rule to § 1983 claim). The Seventh Circuit, without discussion, applied the rule in the civil rights context in *Wilson.*

8. Defendants have not argued that other conduct or events occurred after plaintiff was a student but prior to her reaching the age of eighteen which would have triggered the statute of limitations.

the abuser based entirely on injuries arising from the sexual abuse, plaintiff's cause of action would certainly be time barred.

The theory of plaintiff's case, however, is not simply that she was sexually abused but that she was abused by a teacher under circumstances created by defendants. In other words, had it not been for defendants' alleged failure to properly take action to prevent abuse by the teacher, plaintiff would not have been abused by him. While she may have known she was abused, there is nothing in the complaint to remotely suggest that she knew or should have known of the alleged acts or omissions on the part of defendants. On the contrary, the fourth amended complaint alleges that defendants took action to conceal or cover-up the teacher's sexual misconduct. Under such alleged circumstances, it is not at all reasonable to expect a minor student to have effectively discovered such efforts by defendants. She certainly would have no reason to know that her constitutional rights had been violated.

Accordingly, her claims did not accrue during the time periods of her sexual abuse alleged in the fourth amended complaint. Based on the allegations in the complaint, plaintiff is not barred by the statute of limitations.[9]

■■■ This ruling is consistent with the reasoning in *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir.1985), wherein the Seventh Circuit stated that "[t]he cause of which a federal tort claimant must have notice for the statute of limitations to begin to run is the cause that is in the government's control, not a concurrent but independent cause that would not lead anyone to suspect that the government had been responsible for the injury." Translated into the terms of this case, it may have been reasonable for plaintiff to believe that the sexual abuse was caused by nothing more than the teacher's improper and self-serving motivation without her having any reason to suspect that the school board or its administrators had been responsible in any way for the teacher's conduct. As the Seventh Circuit noted in *Drazan*, the notice must not be of harm but of governmental harm.[10]

## II. Merits of the Motions

While plaintiff has asserted several theories of constitutional deprivation, her claims essentially implicate the Fourteenth Amendment in two ways: an alleged denial of her liberty interest and the denial of meaningful access to the courts. Plaintiff's theories concerning denial of her liberty interest in turn follow two different roads. She maintains that defendants, by virtue of their relationship to her and their responsibilities under Illinois law, had an affirmative duty to protect her from and prevent the alleged sexual abuse. Alternatively, she alleges that defendants created and promoted policies that fostered a climate to flourish where female students, including plaintiff herself, were left

9. As noted earlier, defendants have not argued that plaintiff's claims accrued at some time later than but prior to her eighteenth birthday or at any time beyond her turning eighteen that would have resulted in her claims now being time barred. Of course, to do so would require evidence outside the complaint which would necessitate denial of the motion to dismiss or perhaps conversion to a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b). In this regard, the court notes that in a similar situation a federal court denied a defendant's motion to dismiss. *See Sowers v. Bradford Area School Dist.*, 694 F.Supp. 125 (W.D.Pa.1988). In doing so, the court found that the question of whether the plaintiff should have known of her constitutional injury was primarily a question of fact which precluded dismissal of the complaint. *Sowers*, 694 F.Supp. at 138–39.

In referring to *Sowers*, this court recognizes that the decision of the Third Circuit affirming

*Sowers* was appealed and the Supreme Court vacated the judgment and remanded to the Third Circuit for further consideration in light of *De Shaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). *See Smith v. Sowers*, 490 U.S. 1002, 109 S.Ct. 1634, 104 L.Ed.2d 150 (1989). *De Shaney* does not address the statute of limitations issue, and the Third Circuit, upon remand, affirmed *Sowers* without a published opinion. *See Sowers v. Bradford Area School Dist.*, 887 F.2d 262 (3d Cir.1989). Under these circumstances, the district court's ruling on the statute of limitations issue retains vitality.

10. In light of its ruling on the accrual issue, this court need not address the issues concerning equitable estoppel, equitable tolling and fraudulent concealment.

vulnerable to and actually were subject to sexual abuse by a school teacher.

Before analyzing plaintiff's various claims and deciding whether she can state a constitutional claim upon which relief can be granted, the court is compelled to note that not all common-law duties owed by government actors were constitutionalized by the Fourteenth Amendment. *See De Shaney v. Winnebago County Dept. of Social Serv.*, 489 U.S. 189, 202, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989). While a state may decide, through legislative and judicial decision-making, to impose certain affirmative duties upon its agents and employees, *see De Shaney*, 489 U.S. at 202, 109 S.Ct. at 1006, there need not be a commensurate constitutional tort consistent with such state-invoked duties. In the present case, while it may appear from the allegations that plaintiff has suffered harm based upon the purported acts or omissions of various defendants, the only question for this court to decide in assessing her claims is whether she was harmed in a constitutional way.

With that in mind, the court begins by pointing out that there is only a handful of cases concerning these types of claims. The Seventh Circuit has, however, decided a case which is applicable to the present situation. In *J.O. v. Alton Community Unit Sch. Dist. 11*, 909 F.2d 267 (7th Cir.1990), the court affirmed the dismissal of a section 1983 action brought against a school district on behalf of minor plaintiffs who had been allegedly molested by a teacher. The theory alleged in that case was that the school defendants had a special relationship to the school children thereby giving rise to an affirmative duty to provide for their safety and prevent the child abuse. *J.O.*, 909 F.2d at 272. The court of appeals held that "[o]nly where the state has exercised its power so as to render an individual unable to care for himself or herself may an affirmative duty to protect that individual arise." *J.O.*, 909 F.2d at 272 (citing *De Shaney*, 489 U.S. at 199–200, 109 S.Ct. at 1005.) More importantly, the court stated that the government, acting through local school administrators, has not rendered students so helpless that an affirmative constitutional duty to protect them arises. *J.O.*,

909 F.2d at 272. What duty of protection does exist is best left to state law and not the Constitution. *J.O.*, 909 F.2d at 272. Notwithstanding mandatory school attendance, parents are still the primary caregivers, and both the students and parents retain substantial freedom to act. *J.O.*, 909 F.2d at 272.

It is this court's opinion that the *J.O.* decision forecloses plaintiff's constitutional claims, at least to the extent they are premised upon theories requiring an affirmative duty by defendants to have acted on behalf of plaintiff and others like her to prevent such abuse. As the Seventh Circuit noted in *J.O.*, plaintiff was free to take action on her own behalf as well as was her parents. There are no allegations that any of defendants restrained plaintiff's freedom to report the abuse to her parents, to local law enforcement authorities or to state authorities such as DCFS. Likewise, there are no allegations that plaintiff's parents were restrained from reporting what they may have known to authorities outside the school system.

Furthermore, while defendants may have had an obligation under Illinois law to report their knowledge and suspicions regarding sexual abuse by the teacher, any failure to do so did not deprive plaintiff of due process. Her status as a student in the public school system did not confer upon defendants the responsibility to act in her or her parents' stead to the exclusion of her own or her parents' abilities to act on her behalf. While the court recognizes the important role school administrators play in detecting and reporting sexual abuse, that role does not place any constitutional restrictions on plaintiff or her parents to take steps to protect plaintiff from such abuse. *See D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1374–75 (3d Cir.1992).

The Seventh Circuit strongly intimated in *J.O.*, however, that a plaintiff could allege a claim that school administrators "promoted school policies that 'encourage[ed] a climate to flourish where innocent [children] were victimized.'" *J.O.*, 909 F.2d at 272 (citing *Stoneking v. Bradford Area Sch.*

*Dist.*, 882 F.2d 720, 730 (3d Cir.1989), *cert. denied*, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990)). Additionally, in deciding whether the plaintiffs should have been allowed to amend their pleadings, the Seventh Circuit expressed its lack of belief that "the plaintiffs could never allege sufficient facts to support a section 1983 claim. *See Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720 (3d Cir.1989) (recognizing section 1983 cause of action where school administrators enacted policies that allowed child sexual abuse to flourish)." *J.O.*, 909 F.2d at 273. The court interprets these references to *Stoneking* to be an implicit acceptance of the theory of constitutional liability as set forth in *Stoneking.* The court will thus consider the Third Circuit's opinion in *Stoneking* in determining whether plaintiff here has stated a cause of action thereunder.[11]

In *Stoneking*, the plaintiff, a female high school student, filed suit under 42 U.S.C. § 1983 against the high school district, the superintendent, the principal and assistant principal in both their individual and official capacities. 882 F.2d at 722. Her complaint alleged that the high school band director sexually abused her while she was a student. Her complaint further averred that prior to her being abused, another female band member had reported to the principal that the band director had attempted to rape or sexually assault her. 882 F.2d at 722. According to the complaint, the principal maintained a file which contained other reports of sexual misconduct by the director, and he announced to the director a policy under which he was to have no one-on-one contacts with female band members. Plaintiff also alleged that the superintendent, principal and assistant principal " 'failed to take any action to protect the health, safety and welfare of the female student body,' " that the superintendent and assistant principal "were also on notice of the complaints of sexual misconduct * * * and of the policy adopted by [the principal]," and that if the superintendent "was not aware, it was because of the 'defective and deficient policies and customs' of the School District." 882 F.2d at 722.

The court began its analysis pertinent to this case by noting that the situation it faced was different from that in *De Shaney v. Winnebago County Dept. of Social Serv.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), in that the injuries in *De Shaney* were committed by *private* actors whereas Stoneking's injuries resulted from the actions of a state employee. 882 F.2d at 724. Significant to the Third Circuit was that the band director was a school district employee sub-

---

11. In doing so, the court notes that the Seventh Circuit's opinion in *J.O.* does not engage in any analysis of the *Stoneking* decision. While applying *Stoneking* to this case, this court has some reservations about whether a protectible liberty interest under the Fourteenth Amendment is implicated in this type of case. In *Stoneking*, the Third Circuit did not directly address the issue as the defendants conceded at oral argument that Stoneking had a liberty interest protected by the substantive component of the due process clause. *Stoneking v. Bradford Area Sch. Dist.*, 856 F.2d 594, 599 (3d Cir.1988) (*Stoneking I*), *vacated sub nom. Smith v. Stoneking*, 489 U.S. 1062, 109 S.Ct. 1333, 103 L.Ed.2d 804 (1989). Furthermore, there is language in *J.O.* that is arguably inconsistent with *Stoneking* to the extent the court noted that the students and parents remained substantially free to act. *J.O.*, 909 F.2d at 272.

In *De Shaney v. Winnebago County Dept. of Social Serv.*, 489 U.S. 189, 200, 109 S.Ct. 998, 1005, 103 L.Ed.2d 249 (1989), the majority stated that in a substantive due process analysis "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interest against harms inflicted by other means." In other words, the State must act to restrain personal liberty in some significant way to create this type of constitutional claim. This is so notwithstanding the distinction between State actors and private actors which supplies the *Stoneking* court's basis for distinguishing *De Shaney*. See *Stoneking*, 882 F.2d at 724–25.

In the present case, there are no allegations that plaintiff was not free to report the alleged sexual abuse to her parents or to authorities outside the school. Nor are there allegations that plaintiff was unnecessarily subjected to contact with the teacher or stripped of her ability to avoid or limit such contact. Thus, there is some doubt as to a denial of plaintiff's liberty interest under the facts as alleged. Nevertheless, the court will apply *Stoneking*, as the Seventh Circuit has not suggested otherwise.

ject to defendants' immediate control. 882 F.2d at 724.[12]

The court of appeals further emphasized that plaintiff claimed liability on the part of the defendants because they adopted and maintained "a practice, custom or policy of reckless indifference to instances of known or suspected sexual abuse of students by teachers, in concealing complaints of abuse, and in discouraging students' complaints about such conduct." 882 F.2d at 724–25. The *Stoneking* plaintiff further argued "that these practices, customs or policies created a climate which, at a minimum, facilitated sexual abuse by teachers in general, and that there was a causal relationship between these practices, customs or policies and the repeated sexual assaults against her." 882 F.2d at 725. Additionally, the court stated that the liability of municipal *policymakers* for policies or customs chosen or recklessly maintained is not dependent upon the existence of a special relationship between the municipal officials and the persons harmed. 882 F.2d at 725. The court concluded that the plaintiff could maintain a viable section 1983 claim "because she has also alleged that defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused her constitutional harm." 882 F.2d at 725. Lastly, the Third Circuit pointed out that it is unnecessary for a plaintiff to claim that there was a policy or custom based upon a desire by policymakers to have students abused. Rather, it held that if the need for more or a different policy is so obvious and the inadequacy so likely to result in a violation of constitutional rights, the policymakers can reasonably said to have been deliberately indifferent to the need. 882 F.2d at 725.

■ To properly plead a cause of action under *Stoneking,* this court believes a plain-

tiff must allege the following: (1) that defendants established, through action or inaction, a policy, practice or custom; (2) that such policy, practice or custom was established with deliberate or reckless indifference to the consequences; (3) that such policy, practice or custom fostered a climate which facilitated sexual abuse of minor students by school employees; and (4) that the policy, practice or custom directly caused constitutional harm.

■ As to Davison, Spurlock and Kern, plaintiff has alleged sufficient facts to support a claim under *Stoneking.* There are numerous allegations that Davison, Spurlock and Kern knew of instances of sexual abuse between the teacher and minor female students before and during the time in which plaintiff was allegedly abused. There are also various allegations that no effective action, disciplinary or otherwise, was taken by these three defendants, that they failed to report such conduct or suspected conduct to DCFS and they failed to initiate any other investigation or action by state or law enforcement authorities. Furthermore, it is alleged these defendants concealed knowledge of the teacher's past sexual misconduct and the existence of the reporting act from another victim and her mother. There are also allegations that these defendants failed to train teachers, counselors and other school personnel to report suspected sexual abuse to DCFS. It is further alleged that this conduct by defendants created an increased risk of harm to plaintiff which ultimately led to her being sexually abused. When viewed in their entirety, these allegations state a claim under *Stoneking.* Consequently, defendants' motion to dismiss Counts I, II, and III of the fourth amended complaint is denied.[13]

---

12. The court rejected defendants' argument that the fact the band director was an agent and employee was merely an assertion of supervisory liability, which could not provide a basis of liability in a § 1983 case. 882 F.2d at 724. The court pointed out that it was not a case in which the plaintiff alleged that defendants were vicariously liable because of the band director's conduct. Rather, plaintiff claimed liability against the defendants "because of their own actions." 882 F.2d at 724. This court reads plaintiff's complaint in the present case to be attempting to

allege direct liability under § 1983 and not to be claiming that defendants are liable solely because of their supervisory capacities over the teacher.

13. To the extent defendants' motion to dismiss is directed at Count IV against the school district and school board members, it is also denied, as that count sets forth facts sufficient to state a claim under *Stoneking.* It is alleged in Count IV that the school district's practice was not to report instances of sexual abuse and that the school board acquiesced in or ratified this prac-

Counts XI, XII, XIII and XIV are directed at the four counselors. As to those four defendants, it is alleged that each knew or had reason to suspect that plaintiff and other female students were sexually abused by the teacher and yet they did not report such knowledge to DCFS. They failed to report the sexual abuse to DCFS notwithstanding their knowledge that Davison, Spurlock and Kern took either no action or ineffective action to prevent the abuse.

These allegations are insufficient to sustain a claim under *Stoneking* because it is not alleged that any practice, policy or custom resulted from action or inaction of these defendants. The mere failure to report known or suspected instances of sexual abuse to DCFS did not alone foster a climate which facilitated the sexual abuse of female students. This is so even though these four defendants allegedly knew that Davison, Spurlock and Kern were not taking any action or effective action to prevent sexual abuse by the teacher. It is not alleged that these defendants had any duty other than to report their knowledge or suspicion to DCFS. They are not alleged to be in a supervisory or policymaking role such that their actions or inactions were likely to create a climate conducive to sexual abuse. Certainly, had they complied with the Illinois reporting law, the risk of further abuse by the offending teacher may have been reduced. Their failure to do so, without more, however, does not state a claim of the type contemplated by *Stoneking*. These four defendants' motion to dismiss Counts XI–XIV is therefore granted.

Alternatively, defendants have moved to dismiss Counts V through VII of the fourth amended complaint for failure to state a cause of action.[14] The Seventh Circuit has recognized a due process right of access to the courts. *Vasquez v. Hernandez,* No. 91 C 4008, 1992 WL 317195, at *3–4, 1992 U.S.Dist. Lexis 16478, at *9 (N.D.Ill. Oct. 27, 1992) (citing *Bell v. City of Milwaukee,* 746 F.2d 1205, 1261 (7th Cir.1984)). Judicial access must be adequate, effective and meaningful. *Bell,* 746 F.2d at 1261; *Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir.1983). Such a constitutional right is lost where government officials shield from a victim key facts which would form the basis of the victim's claim for redress. *See Bell,* 746 F.2d at 1261. Furthermore, this court is of the opinion that such an interference with a plaintiff's constitutional right of access to the courts can give rise to a section 1983 cause of action. *See Vasquez,* No. 91 C 4008, 1992 WL 317195, at *4, 1992 U.S.Dist. Lexis 16478, at *10 (citing *Hampton v. Hanrahan,* 600 F.2d 600 (7th Cir.1979)); *see also Ryland,* 708 F.2d at 972 (citing *Sigafus v. Brown,* 416 F.2d 105 (7th Cir.1969)).

Turning to Counts V through VII of the fourth amended complaint, plaintiff has alleged (as against Kern, Spurlock and Davison) that her right to free and unobstructed access to the courts was violated because: (1) the passage of time will affect the ability of witnesses to recollect events; (2) she will be required to respond to motions to dismiss based on timeliness even though it was the conspiracy and concealment which caused the delay in her recognizing her causes of action; (3) she will be hindered from discovering all proper defendants and all relevant actions of defendants related to the statute of limitations prior to the two-year statute of limitations running; (4) she suffered mental and emotional distress, community humiliation, loss of reputation and loss of enjoyment of life; (5) she has been deprived of evidence by Kern's death; and (6) she was delayed five to

tice. It is further alleged that this practice, along with other acts or omissions by the board and school district, created a climate conducive to sexual abuse by the teacher.

14. Defendants in their reply to plaintiff's response to their motion to dismiss contend for the first time that Counts V through X fail to state a cause of action under 42 U.S.C. § 1985 because they do not contain any allegations of racial or class-based discrimination. Plaintiff in her response states that Counts V through VII are

§ 1983 actions. Plaintiff is master of her complaint. As such, this court will not consider defendants' argument that Counts V through VII do not state a cause of action under § 1985. More importantly, defendants cannot raise a basis to dismiss plaintiff's complaint for the first time in a reply brief. Accordingly, this court will not consider the § 1985 argument as to Counts V through X presented in defendants' reply memorandum.

six years before she was able to recognize her causes of action. Counts V through VII, standing alone, clearly do not state a cause of action under section 1983 based on a denial of plaintiff's right of access to the courts.

■ Even when read in conjunction with other relevant allegations in the complaint, Counts V through VII do not state a basis upon which relief can be granted. Plaintiff has failed to allege what her specific prejudice is in this case. A speculative allegation that witnesses will lose their ability to recall does not rise to the level of a denial of meaningful access. All witnesses lose their recollection to one degree or another over time. This is more likely to occur where the complained of events arise while a plaintiff is a minor and must await majority to file suit. Likewise, the fact that plaintiff will be required to respond to a motion to dismiss based on the statute of limitations is of no constitutional consequence. If defendants did interfere with her ability to file suit in a timely fashion, she would prevail under an exception to the limitations rule such as the discovery rule or collateral estoppel. If they did not, then she should have brought the claim within the appropriate limitations period. The mere need to respond to the statute of limitations defense does not deny her access to the courts. Similarly, she will suffer no more of a hindrance to discovering potential defendants and actionable conduct as it relates to the statute of limitations than would any other plaintiff absent some allegations that defendants concealed the identity of other potential defendants or destroyed evidence. There are no such allegations here, however. Plaintiff's allegations that defendants covered up the sexual abuse of the teacher does not suggest that they concealed the identity of other persons who may also have been involved in the alleged cover-up. Furthermore, plaintiff's allegations of distress, humiliation, loss of reputation and enjoyment of life do not relate in any way to a deprivation of meaningful court access. Additionally, the death of Kern, while a possible hindrance to plaintiff's ability to garner evidence, does not, without more, rise to the level of a denial of access to the courts. Lastly, a five or six year delay is not alone, or combined with other factors, sufficient to support plaintiff's claim. While the court is cognizant of its duty to draw all reasonable inferences in favor of plaintiff, Counts V through VII, even when read in conjunction with the rest of the complaint, do not state a claim of denial of access to the courts under section 1983 and are accordingly dismissed.

Counts VIII, IX, and X, however, present a more complicated picture. This is so because plaintiff has cast them in terms of a conspiracy and further seeks relief under both section 1983 and section 1985. It is alleged that Davison, Spurlock and Kern had either an express or implied agreement with each other and the four named counselors to disregard state law by not reporting the teacher to DCFS. In furtherance of that agreement, each defendant failed to report the teacher and failed to require the counselors to do so. Defendants, however, contend that Counts VIII through X should be dismissed based on the intracorporate conspiracy doctrine.

■ The Seventh Circuit has recently reaffirmed the vitality of the intracorporate conspiracy doctrine in the context of a conspiracy claim brought pursuant to 42 U.S.C. § 1985(2). *See Travis v. Gary Community Mental Health Center, Inc.,* 921 F.2d 108, 109–11 (7th Cir.1990). That same court previously applied the doctrine to a section 1985(3) conspiracy claim. *Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972). The intracorporate conspiracy doctrine bars a section 1985 conspiracy case where proof of a discriminatory act reflects the collective judgment of two or more executives of the same firm. *Rhodes v. Deere,* No. 90 C 20336, 1991 WL 352612, at *3–4, 1991 U.S.Dist. Lexis 20554, at *7–8 (N.D.Ill.1991) (citing *Dombrowski,* 459 F.2d at 196). Managers of a corporation who are jointly pursuing its lawful business do not become conspirators for purposes of section 1985 when acts within their employment are said to be discriminatory or retaliatory. *Travis,* 921 F.2d at 110.

■ The intracorporate conspiracy doctrine has been applied to conspiracy claims brought against school administrators. *See Rhodes v. Deere,* No. 90 C 20336, 1991 WL 352612, 1991 U.S.Dist. Lexis 20554 (N.D.Ill.

1991); *Cromley v. Board of Ed. of Lockport Township High School Dist. 205*, 699 F.Supp. 1283 (N.D.Ill.1988). The language of *Rhodes* is particularly useful in this case. There, Judge Stanley J. Roszkowski noted that the defendants' (school board, superintendent, and board members) ability to injure the plaintiff "derived solely from their positions within the school district and the influence they wielded therefrom." *Rhodes*, No. 90 C 20336, 1991 WL 352612, at *3, 1991 U.S.Dist. Lexis 20554, at *9. The defendants in *Rhodes* had no ability, outside there official capacities, to affect the plaintiffs' employment positions. *Id.*

*Rhodes* applies in this case. Here, defendants Kern, Spurlock and Davison could only have conspired to coverup or conceal the offending teacher's conduct within their official capacities as school administrators. They would have been in no position to have controlled or hindered any investigation into the teacher's conduct as individual citizens. Nor did they have any authority to take any action against the teacher outside their administrative roles.

■■■ Plaintiff suggests that they acted outside their official corporate capacities because they acted wrongfully and thus the doctrine should not apply. If the measure of the applicability of the intracorporate conspiracy doctrine was keyed to the alleged wrongdoing of corporate officers, it would quickly become a meaningless concept. In every case of conspiracy under section 1985 there are necessarily accusations of wrongful conduct. The test is not the wrongful nature of the conspirators' actions but whether the wrongful conduct was performed within the scope of the conspirators' official duties. In this case it was. As pointed out by other courts, the section 1985 conspiracy counts would add nothing in terms of defendants' liability as Counts I through IV remain. *See Rhodes*, No. 90 C 20336, 1991 WL 352612, at *3, 1991 U.S.Dist. Lexis 20554, at *10; *Cromley*, 699 F.Supp. at 1292.

■■■ The remaining issue is whether the intracorporate immunity doctrine should also apply to bar any conspiracy claims under section 1983. One court in this district has already done so. *See Cromley*, 699 F.Supp. at 1291–92; *see also Buschi v. Kirven*, 775 F.2d 1240 (4th Cir.1985) (applying doctrine to § 1983 conspiracy claim). While the Court of Appeals for the Seventh Circuit has not had occasion to consider the issue, there is language in *Travis* that suggests the doctrine has equal vitality to a claimed conspiracy under section 1983. In discussing the history of section 1985, the court of appeals noted Congress's understanding, at the time of passage of section 1985, that corporate employees acting to pursue the business of the firm could not be treated as conspirators. *Travis*, 921 F.2d at 110. Courts looked past the individual acts to concentrate on the collective decision. *Travis*, 921 F.2d at 110. Neither the text and structure nor the background of section 1985 imply a Congressional decision to discard this understanding. *Travis*, 921 F.2d at 110. One of the policies behind the doctrine is to preserve independent decision-making by persons or business entities, free of the pressures generated by the threat of conspiracy claims. *Travis*, 921 F.2d at 110.

■■■ This court believes the same reasoning applies with equal force to a conspiratorial section 1983 claim in this context. Section 1983 is of the same Congressional vintage as section 1985. Furthermore, a section 1983 conspiracy claim would also have potentially the same disruptive effect on business decisions as a section 1985 conspiracy action. Thus, plaintiff's conspiracy claims premised on section 1983 against Kern, Spurlock and Davison are barred as well. Consequently, the court dismisses, as well, Counts VIII through X of the fourth amended complaint.[15]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the fourth amended complaint

---

15. The fact that plaintiff has named defendants in their individual as well as official capacities does not detract from this conclusion. *See Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir.1985).

The court dismisses these counts in their entirety notwithstanding the allegations contained therein that directly support the claims asserted in Counts I, II and III. To do otherwise would be to allow unnecessary and repetitious pleading.

is denied as to Counts I through IV and granted as to Counts V through XIV.