**ROMAN CATHOLIC DIOCESE OF COVINGTON, Appellant,**

v.

**John SECTER, Appellee.**

**John SECTER, Cross–Appellant,**

v.

**ROMAN CATHOLIC DIOCESE OF COVINGTON, Cross–Appellees.**

Nos. 96–CA–0782–MR, 98–CA–0781–MR.

Court of Appeals of Kentucky.

April 3, 1998.

Robert I. Cusick, Louisville, for Roman Catholic Diocese of Covington.

John J. O'Hara, Michael O'Hara, Suzanne Cassidy, Covington, for John Secter.

Before BUCKINGHAM, COMBS and GARDNER, JJ.

### OPINION

BUCKINGHAM, Judge.

Roman Catholic Diocese of Covington (the Diocese) appeals from a judgment of the Kenton Circuit Court awarding John Secter (Secter) $50,000 in compensatory damages and $700,000 in punitive damages for the negligent hiring, supervision, and retention of high school teacher and guidance counsel-

or, Earl Bierman (Bierman). For the reasons set forth hereinafter, we affirm.

Secter attended Covington Latin School (CLS), which was operated by the Diocese, from 1972 until 1976. On several occasions during the time Secter attended CLS as well as on one occasion shortly after Secter's graduation, Bierman touched Secter in a sexually offensive and inappropriate manner. The last incident occurred in July 1976, approximately six months before Secter turned eighteen. Secter never reported the incidents nor discussed them with anyone until 1992, due to feelings of shame and embarrassment.

In November 1992, Secter learned from television reports that Bierman had sexually abused other students. These reports brought back memories of his own abuse, and Secter was hospitalized three days for emotional trauma several months after the programs aired. The programs also prompted Secter to have several conversations with the Diocesan Chancellor concerning the incidents and how they could have occurred.

A criminal investigation resulted in Bierman's being arrested and convicted of twenty-eight counts of sexual abuse of minors, as well as the filing of several civil suits by Secter and others. Secter filed his suit against Bierman and the Diocese on October 29, 1993. Secter alleged in his complaint that Bierman intentionally sexually assaulted him and that the Diocese negligently hired, supervised, and retained Bierman as a teacher and guidance counselor in its schools.

During the course of discovery, the trial court ordered the Diocese to produce Bierman's "Canon 489" files, or secret archive files, which contained information of a sensitive or scandalous nature. The files revealed that the Diocese had received reports of Bierman's sexually abusing students at its schools prior to Secter's attendance at CLS. In the early 1960's, Bierman was sent to New Mexico for a period of four years after reports of sexual abuse surfaced. Upon Bierman's return to Covington, then-Bishop Richard Ackerman placed Bierman back in the Diocese's schools, despite the Bishop's expressing concerns in his correspondence that Bierman's pedophilia had not been cured and

that he would continue to be "a problem." The Diocese received additional reports of sexual assaults of students by Bierman in the late 1960's and early 1970's. Other than transferring Bierman's residence, the Diocese did not discipline or sanction Bierman, did not inform other students, parents, or employees, and did not report the incidents to state authorities.

Both Bierman and the Diocese moved the trial court to dismiss Secter's suit as barred by the statute of limitations. The trial court granted Bierman's motion, and he was dismissed from the case. However, the trial court denied the Diocese's motion to dismiss and supplemental motion for summary judgment, finding that there existed material factual issues regarding whether Secter could have reasonably discovered the Diocese's misconduct and whether the Diocese concealed or otherwise obstructed Secter from obtaining information material to his claim.

At trial, both Secter and the Diocese moved for directed verdicts on the issue of the statute of limitations. The trial court denied both motions, and the issue was submitted to the jury. The jury returned a unanimous verdict for Secter, awarding him $50,000 in compensatory damages and $700,000 in punitive damages, and it apportioned fault seventy-five percent to the Diocese and twenty-five percent to Bierman. The Diocese thereafter filed its appeal, and Secter filed a cross-appeal to preserve several issues for review in the event the case was remanded for retrial.

Secter's claim herein was an action based on personal injury and thus subject to the one-year statute of limitations provided in KRS 413.140(1)(a).[1] The Diocese contends that no applicable exception applies to this rule and that Secter's suit, brought seventeen years after the last inappropriate touching by Bierman, is thus clearly barred. Secter contends, however, that his complaint was timely filed under the discovery rule or, in the alternative, that the Diocese is estopped from relying on the statute of limitations due

to fraudulent concealment by operation of KRS 413.190(2).

The first argument of the Diocese is that the discovery rule has no application to Secter's claim. KRS 413.140(1)(a) provides that a personal injury action must be commenced within one year "after the cause of action accrued." Generally, a cause of action is said to accrue when the injury occurs. *Caudill v. Arnett*, Ky., 481 S.W.2d 668, 669 (1972). However, in certain cases, a cause of action does not necessarily accrue when the injury occurs, but rather when the plaintiff first discovers the injury or should have reasonably discovered it. Pursuant to KRS 413.140(2), causes of action for medical malpractice or recovery of stolen property are subject to the discovery rule rather than the general occurrence rule. Kentucky courts have also applied the discovery rule to cases involving latent injuries arising from exposure to harmful substances. *See e.g. Louisville Trust Co. v. Johns–Manville Products Corp.*, Ky., 580 S.W.2d 497, 501 (1979).

With the exception of cases involving latent injuries from exposure to harmful substances, Kentucky courts have generally refused to extend the discovery rule without statutory authority to do so. *See e.g. Housing Now–Village West, Inc. v. Cox & Crawley, Inc.*, Ky.App., 646 S.W.2d 350, 352 (1982) (refusing to extend the discovery rule to an action for damages arising from construction of real estate), and *Plummer v. Summe*, Ky.App., 687 S.W.2d 543, 544 (1984) (refusing to extend the discovery rule to an action for interference with marital relationship).

Most notably, this court declined to extend the discovery rule in the factually similar case of *Rigazio v. Archdiocese of Louisville*, Ky.App., 853 S.W.2d 295 (1993). In that case, a school teacher employed by the Archdiocese of Louisville admitted to having sexually abused the plaintiff while the plaintiff was an elementary school student. The plaintiff did not file suit against the teacher or the Archdiocese of Louisville until

---

1. Sector was a minor when the acts of abuse occurred, and KRS 413.170(1) provides that the limitations period for any action mentioned in KRS 413.090 to 413.160 begins to run when the minor reaches the age of majority.

more than six years had passed after his eighteenth birthday. Thus, despite the fact that the statute of limitations was tolled during his infancy, his claims for battery, negligence, and outrage were clearly not timely filed under the general occurrence rule. *Id.* at 296.

This court noted in *Rigazio* that neither the Kentucky Supreme Court nor the General Assembly had extended the discovery rule beyond professional malpractice or latent injury from exposure to harmful substances. Furthermore, the court found that the facts of the case did not fall within the circumstances of the discovery rule because, at the time the cause of action accrued and for sometime thereafter, the plaintiff was both aware of the injury and past the age of eighteen. The court stated that "[t]he fact that his memory of these events was thereafter suppressed, only to return years later, would not seem to present a circumstance falling within the discovery rule which relates to injuries which cannot be discovered with reasonable diligence." *Id.* at 297.

In the case sub judice, Secter does not allege memory loss and was aware of his injury (being sexually abused) within one year of his reaching the age of majority. Thus, his injury would not fall within the discovery rule under *Rigazio, supra.*

The Diocese argues that even if the discovery rule is applied to this case, Secter's claim would still be time-barred as the Kentucky Supreme Court has stated that "[e]ven in cases where the discovery rule has applied, we have held that the cause of action accrues when the *fact of injury* is known." *McCollum v. Sisters of Charity of Nazareth Health Corp.,* Ky., 799 S.W.2d 15, 19 (1990) (emphasis added). Secter argues, however, that under the discovery rule, his cause of action against the Diocese did not accrue until he became aware that the actions of the Diocese were a substantial factor in causing the sexual abuse which he suffered, quoting *Johns–Manville, supra* at 500 ("the cause of action should accrue ... when the Plaintiff knew or should have known that he had been injured

by the conduct of the tortfeasor"), and *Perkins v. Northeastern Log Homes,* Ky., 808 S.W.2d 809, 819 (1991) (cause of action accrues under discovery rule when plaintiff discovers or should discover "not only that he has been injured but also that his injury may have been caused by the defendant's conduct").[2]

*Doe v. Board of Educ. of Hononegah Community High School Dist. # 207,* 833 F.Supp. 1366 (N.D.Ill.1993), supports Secter's argument that his claim should be considered timely under the discovery rule. The plaintiff in that case sued her school board for deprivation of constitutional rights resulting from the school's failure to prevent her sexual abuse by a teacher. The plaintiff's complaint alleged that school officials had failed to report prior instances of the teacher's sexual abuse of other students, failed to take disciplinary action against or remove the teacher, discouraged students and parents from reporting the teacher's sexual misconduct, and on at least one occasion, falsely told a parent that the teacher had not been known to engage in sexual misconduct in the past. *Id.* at 1370–71. Applying the federal discovery rule, the Northern District of Illinois refused to dismiss the plaintiff's claim despite her failure to file her lawsuit within two years (the applicable Illinois statute of limitations for her claim) of reaching her eighteenth birthday. That court found that under the circumstances alleged, the plaintiff could not have discovered the defendant's alleged acts and omissions through the exercise of due diligence in time to file her suit within two years of her eighteenth birthday. *Id.* at 1376. Nonetheless, while *Doe, supra,* may be persuasive, it is not binding precedent on this court.

The courts in this Commonwealth have been reluctant to extend the discovery rule and have applied it narrowly as in *McCollum, supra.* To extend that rule to cover the facts of this case would be beyond that allowed by Kentucky courts to this date. As this court did in *Johns–Manville, supra,* we

**2.** Both the *Johns–Manville* case and the *Perkins* case involved latent injuries suffered due to exposure to harmful substances.

will follow established precedent and not make new policy. *Id.* at 499.

■ The next issue is whether the trial court erred in allowing the jury to determine whether the statute of limitations was tolled under KRS 413.190(2) or whether the Diocese should have been granted a directed verdict on that issue. KRS 413.190(2) provides that

[w]hen a cause of action mentioned in KRS 413.090 to 413.160 accrues against a resident of this state, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced.

Secter states that the Diocese should be estopped from relying on the statute of limitations due to its failure to report incidents of sexual abuse by Bierman to the authorities as well as its continued concealment of its knowledge in secret archive files and its failure to inform students, faculty, and staff. On the other hand, the Diocese states that concealment alone is not enough to toll the statute of limitations. Rather, it argues that the concealment must "in point of fact" mislead or deceive the plaintiff so that he or she is lulled into inaction or is otherwise obstructed from investigating or instituting suit during the limitations period. *See e.g. Adams v. Ison,* Ky., 249 S.W.2d 791, 792 (1952).

The Diocese knew prior to the period of time in which Secter was abused that Bierman had sexually abused students and would continue to be "a problem" and continued to receive reports of Bierman's sexually abusing students during at least part of the time period in which Secter was abused. Nevertheless, the Diocese took no action to discipline or sanction Bierman, to inform other students, parents, or employees, or to report

the incidents to state authorities. The information was kept secret and confidential in the Canon 489 file, and Secter had no clue that the Diocese had prior knowledge of Bierman's propensities until 1992. Until that time, Secter neither knew nor had reason to know that he had a potential cause of action against the Diocese for causing tortious injury to him due to the Diocese's concealment of its knowledge of Bierman's actions toward other students.

■ In bringing a cause of action for personal injury such as in this case, the statute of limitations may be tolled where the defendant absconds, conceals himself, or "by any other indirect means obstructs the prosecution of the action[.]" KRS 413.190(2). "Obstruction might also occur where a defendant conceals a plaintiff's cause of action so that it could not be discovered by the exercise of ordinary diligence on the plaintiff's part." *Rigazio, supra* at 297. The Diocese clearly obstructed the prosecution of Secter's cause of action against it by continually concealing the fact that it had knowledge of Bierman's problem well before the time that Secter was abused as well as the fact that it continued to receive reports of sexual abuse of other students during part of the time period in which Secter was abused.

■ Furthermore, "where the law imposes a duty of disclosure, a failure of disclosure may constitute concealment under KRS 413.190(2), or at least amount to misleading or obstructive conduct." *Munday v. Mayfair Diagnostic Lab.,* Ky., 831 S.W.2d 912, 915 (1992). KRS 199.335, the statute in effect when these incidents occurred, imposed a legal duty on any person to report child abuse to law enforcement authorities.[3] The Diocese failed to comply with this duty, and such failure constitutes evidence of concealment under KRS 413.190(2). In short, the trial court properly denied the Diocese's directed verdict motion on this issue.[4]

---

3. KRS 199.335 has now been replaced by KRS 620.030.

4. We are aware of *Doe v. Archdiocese of Washington,* 114 Md.App. 169, 689 A.2d 634 (1997), which was rendered in early 1997 after the par-

ties herein had filed their briefs. Although the case is very similar to the case sub judice and reaches a different result, we are not persuaded by it and decline to follow it as it is not binding precedent on this court.

■ The last error alleged by the Diocese is that the trial court erred in allowing the jury to assess punitive damages. KRS 411.184(2) provides that "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." The Diocese argues that by the plain language of the statute, punitive damages are available only upon a showing that it acted toward Secter with fraud, malice, or oppression and that there was no evidence that it acted in this manner specifically toward Secter since it had no way of knowing that Bierman had abused Secter or that Bierman would be likely to abuse Secter as opposed to any other individual student.

Pursuant to *Shortridge v. Rice*, Ky.App., 929 S.W.2d 194 (1996), an instruction on punitive damages was appropriate. In that case, this court determined that a plaintiff who was injured by the defendant's drunken driving was entitled to a jury instruction on punitive damages even though his conduct was clearly not specifically directed toward the plaintiff. *Id.* at 197–98.

Finally, Secter alleges in his cross-appeal that the trial court erred in instructing the jury to apportion fault between the Diocese and Bierman. KRS 411.182, which governs the allocation of fault in tort actions, provides in pertinent part:

(1) In all tort actions, . . . involving fault of more than one party to the action, . . . the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:

(a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who

has been released from liability [by agreement]. . . .

(2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.

Secter contends that apportionment between negligent and intentional tort-feasors is not required and that KRS 411.182 precludes apportionment between tort-feasors sued on distinct and independent claims. He contends that the Diocese and Bierman should each be held jointly and severally liable for the entire amount of his damages.

■ The adoption of comparative fault has "established that liability among joint tort-feasors in negligence cases is no longer joint and several but is several only." *Dix & Assocs. Pipeline Contractors, Inc. v. Key*, Ky., 799 S.W.2d 24, 27 (1990). *See also Prudential Life Ins. Co. v. Moody*, Ky., 696 S.W.2d 503, 504–05 (1985), and *Reffitt v. Hajjar*, Ky.App., 892 S.W.2d 599, 604 (1994). Since the liability is no longer joint but is several only, liability must be apportioned to each joint tort-feasor. *Dix, supra,* at 27. Furthermore, although the aforementioned cases, which state that joint and several liability is no longer available under our system of comparative fault, only involved negligent tort-feasors and not intentional tort-feasors, we see no reason to create a distinction between the two nor has Secter cited any authority from this Commonwealth supporting his position.

The judgment of the Kenton Circuit Court is affirmed.

All concur.