James R. WILSON, Plaintiff–Appellant,

v.

Linda A. GIESEN, County of Lee, et al., Defendants–Appellees.

No. 91–1013.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 18, 1991.*

Decided Feb. 14, 1992.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed. R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs.

James Wilson, pro se.

John A. Zimmermann, Eve Moran, Asst. Attys. Gen., Chicago, Ill., Thomas D. Murray, Daniel A. Fish, Office of State's Atty. of Lee County, Dixon, Ill., for defendants-appellees.

Before POSNER, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

James Wilson, an inmate at the Stateville Correctional Center, appeals the district court's dismissal of his civil rights complaint. The district court found that Wilson had not filed his complaint within the applicable statute of limitations. For the reasons discussed below, we affirm.

## BACKGROUND

Wilson is an inmate in the Illinois prison system. Construed liberally, his *pro se* complaint alleged violations of 42 U.S.C. § 1983 by state correctional officials, as well as a conspiracy between these officials and Lee County to violate his first amendment,[1] due process, and equal protection rights by wrongfully charging him with unlawful use of a weapon by a felon in January of 1986.[2] 42 U.S.C. § 1985(3).

---

1. Immediately prior to the disciplinary action against him, Wilson had spoken out on behalf of prisoners, opposing prison rule changes.

2. Specifically, Wilson claimed that the contraband had been planted in his cell, and, in any event, that such tools were commonplace and were used by prisoners for making picture frames or removing corns. He also submitted documents in support of his claim that possession of such a tool was treated as a minor offense in most cases, whereas he received unduly strict punishment.

Prison officials gave Wilson a disciplinary ticket for this offense when a search of his cell revealed a toothbrush with a razor blade melted into the handle. The Institutional Inquiry Board approved the issuance of this ticket on March 6, 1986. The Lee County prosecutor brought a criminal charge for this same offense on April 3, 1986, responding to a complaint filed by a prison official. Wilson was convicted on September 23, 1987 and sentenced to ten years on November 5, 1987. The Illinois Supreme Court denied review of the case on December 5, 1989.

Applying Illinois' two-year statute of limitations, the district court found Wilson's complaint untimely. It noted that the claims here accrued, at the latest, on November 5, 1987 (the date of the sentencing). Therefore the limitations period expired on November 5, 1989. According to district court records, however, plaintiff did not file his complaint until November 14, 1989, nine days too late. The court did not consider whether the limitations period had been tolled or whether the complaint might actually have been received before November 5, 1989.

## ANALYSIS

### A. *The Applicable Statute of Limitations*

■ In *Wilson v. Garcia*, 471 U.S. 261, 279, 105 S.Ct. 1938, 1948–49, 85 L.Ed.2d 254 (1985), the Supreme Court held that actions under § 1983 should be characterized as personal injury claims, and, as such, were governed by the personal injury statute of limitations in the state where the alleged injury occurred. In applying these state limitations statutes, federal courts also follow the tolling laws of the state where the injury occurred. *Hardin v. Straub*, 490 U.S. 536, 109 S.Ct. 1998, 2003, 104 L.Ed.2d 582 (1989); *Board of Regents, University of New York v. Tomanio*, 446 U.S. 478, 484, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1988). Federal law, however,

determines the accrual of a claim. *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989); *Saldivar v. Cadena*, 622 F.Supp. 949, 956 n. 2 (W.D.Wis.1985). Generally, a claim accrues when the plaintiff knows or has reason to know of the injury giving rise to the cause of action. *Torres v. Superintendent of Police of Puerto Rico*, 893 F.2d 404, 407 (1st Cir.1990). Civil rights claims, therefore, accrue when the plaintiff knows or should know that his or her constitutional rights have been violated. *See Barrett v. United States*, 689 F.2d 324 (2d Cir.), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); *Rinehart v. Locke*, 454 F.2d 313, 315 (7th Cir.1971) (section 1983 claim regarding the fourth amendment accrued at the time of the arrest and search, not when conviction was subsequently reversed); *cf. Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (section 1981 claim accrued when tenure decision was made and communicated, not when plaintiff was eventually fired).

■ The plaintiff has alleged that many employees of the Illinois Department of Corrections (IDOC) and Lee County conspired to retaliate against him for exercising his first amendment rights by "setting him up" for a prison rules violation and then disciplining and prosecuting him without due process of law. The injuries Wilson suffered because of these alleged wrongs were the punishment for his disciplinary ticket and the ten-year sentence imposed by the Lee County Court. A civil conspiracy claim accrues " 'when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.' " *Scherer v. Balkema*, 840 F.2d 437, 440 (7th Cir.1988) (quoting *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir.1980)). Under these rules, Wilson's claim against Department of Corrections officials accrued at the latest on March 6, 1986, when his prison disciplinary ticket became final.[3] His

---

**3.** Arguably, Wilson's claim accrued as early as January 23, 1986, when IDOC employees wrote the disciplinary ticket. If a conspiracy existed among these employees, or if certain individuals

were trying to wrongfully prosecute Wilson, he knew all of the relevant facts and could have brought a § 1983 claim at that time. Because he alleges that members of the Adjustment Com-

claims against the County accrued on April 3, 1986, when he was prosecuted in state court. Given these accrual dates, the next step is to apply the proper state statute of limitations.

*Kalimara v. Illinois Department of Corrections,* 879 F.2d 276, 277 (7th Cir. 1989) held that § 1983 cases arising in Illinois are governed by the two-year statute of limitations on personal injury claims.[4] Ill.Rev.Stat. ch. 110, ¶ 13–202. Wilson argues, however, that this holding ought to be overturned in light of *Gray v. Lacke,* 885 F.2d 399 (7th Cir.1989), and *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). In *Owens* the Supreme Court stated that "where state law provides multiple statutes of ]imitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." 488 U.S. at 250, 109 S.Ct. at 582. In *Gray* we followed *Owens,* applying Wisconsin's six year personal rights statute to a § 1983 claim, rather than a three-year statute covering "injuries to the person." Illinois, too, has multiple limitations statutes, one of which gives five years for "all civil actions not otherwise provided for." Ill.Rev.Stat. ch. 110, ¶ 13–205. Wilson argues that, under *Owens,* we must apply this residual statute to § 1983 claims arising in Illinois. This argument is waived, however, as the plaintiff failed to raise it until his reply brief, leaving the defendants no chance to respond. *Egert v. Connecticut General Life Insurance Co.,* 900 F.2d 1032, 1035 (7th Cir.1990). Thus, we apply the two-year statute of limitations.

## B. *Effect of Amending the Tolling Statute*

■ Another statute, however, is also relevant to this case. Paragraph 13–211 of the Illinois Code of Civil Procedure tolls the statute of limitations for certain plaintiffs, and has been amended twice in recent years. Ill.Rev.Stat. ch. 110 ¶ 13–211. Until November 23, 1987, paragraph 13–211 tolled the statute of limitations for a prisoner's claims until he was released. The amendment ("1987 amendment") that went into effect on that date, however, made the tolling provision inapplicable to claims against past or present employees of the Illinois Department of Corrections. A second amendment, effective January 1, 1991 ("1991 amendment"), deprived prisoners of any tolling benefits.

Since the plaintiff's claim involves IDOC officials and employees, we must decide what effect the 1987 amendment had on the timeliness of Wilson's complaint. The initial question here is whether the amendment shortened the statute of limitations or eliminated a legal disability. *See Pearson v. Gatto,* 933 F.2d 521 (7th Cir.1991) (recognizing that the amendment might be characterized as doing either, with differing results, but not deciding the question). Literally, of course, the amendment clearly shortened the limitations period, as under the new rule plaintiff would have to file by March 6, 1988 (two years from the accrual of his claim), whereas under the old rule he would have had until two years after his release. Alternatively, if the amendment eliminated a legal disability, he could file his complaint at any time within two years of the amendment. *Kitching v. Ridings,* 45 Ill.App.3d 555, 4 Ill.Dec. 203, 359 N.E.2d 1155 (2d Dist.1977); *Goodwin v. Goldstein,* 46 Ill.App.3d 704, 5 Ill.Dec. 128, 361 N.E.2d 128 (3d Dist.1977). Under this rule the statute of limitations would not have expired until November 23, 1989, and the plaintiff's complaint would be timely.

## 1. Shortening the Limitations Period

■ The general rule in Illinois is that when an amendment shortens a statute of limitations, it applies retroactively if the plaintiff has a reasonable time between the effective date of the amendment and the date when his claim would be barred under

---

mittee and Institutional Inquiry Board also plotted against him, however, we give the plaintiff the benefit of this later accrual date, though in the end it does not affect the outcome.

4. The same statute of limitations applies to claims under § 1983 and § 1985(3). *Bougher v. Univ. of Pittsburgh,* 882 F.2d 74, 79 (3d Cir. 1989); *Kness v. Grimm,* 761 F.Supp. 513, 519 (N.D.Ill.1990).

the amendment in which to file his claim. *Phillips Products Co. v. Industrial Commission,* 94 Ill.2d 200, 203–04, 68 Ill.Dec. 500, 446 N.E.2d 234, 236 (1983). Whether a period is reasonable is decided on a case-by-case basis. *Pearson,* 933 F.2d at 526. If the period is not reasonable, then the plaintiff is allowed a reasonable time to file. *Mega v. Holy Cross Hosp.,* 111 Ill.2d 416, 95 Ill.Dec. 812, 490 N.E.2d 665 (1986). Under the 1987 amendment, Wilson's claim against prison officials would be time barred as of March 6, 1988, less than four months after the change took effect. This would not appear to be a reasonable window of time, especially if, as Wilson alleges, he was placed in segregation and shuttled from prison to prison during this period. Thus the question is whether his complaint was filed within a reasonable time after the amendment, in light of the specific facts of this case.

The complaint here was filed sometime between October 27 and November 2 of 1989,[5] meaning that the plaintiff waited roughly twenty-three months after the 1987 amendment to bring his claim. Was this a reasonable delay? Illinois courts have found delays of more than one year unreasonable where the plaintiff knew of a claim before the shortening amendment took effect. *See Knox v. Lane,* 726 F.Supp. 200, 203 (N.D.Ill.1989) and cases cited therein (regarding delays of fifteen to twenty-two months), but each case must stand on its own facts. The plaintiff claims that throughout 1986 and 1987 prison officials restricted his ability to file suit by placing him in segregation, shuttling him between institutions, and pursuing the criminal charges against him. If true, these allegations might justify Wilson's failure to file during those years. But this does not explain the delay during 1988 and 1989. Wilson does not claim that the oppression continued during these years, and

so he cannot defend the delay. The mere fact of incarceration during this period does not create an excuse. *See Bailey v. Faulkner,* 765 F.2d 102, 103 (7th Cir.1985) (statutes extending limitations periods simply because of incarceration are "hopelessly archaic" in an era when prisoners have ready access to courts). Because the plaintiff failed to file his complaint within a reasonable time after the amendment shortening the statute of limitations, his claim is time barred.

### 2. Removal of a Legal Disability

Plaintiff argues, however, that the 1987 amendment did not shorten the limitations period, but rather eliminated a legal disability, and so he should have had a full two years after the date of the amendment to file his claim. One court has specifically treated the amendment as shortening the limitations period, *see Knox,* 726 F.Supp. at 202, but Wilson's argument relies on a line of Illinois cases dealing with an amendment changing the age of majority for males. *See Kitching,* 45 Ill.App.3d 555, 4 Ill.Dec. 203, 359 N.E.2d 1155; *Goodwin,* 46 Ill. App.3d 704, 5 Ill.Dec. 128, 361 N.E.2d 128. In 1971 the Illinois legislature amended the Probate Act, changing the age of majority for males from twenty-one to eighteen. Ill. Rev.Stat. ch. 3, ¶ 131 (1971). The precursor to paragraph 13–211 (Ill.Rev.Stat. ch. 83, ¶ 22) was then amended in 1972 to comport with the change in the Probate Act, tolling the statute of limitations for actions accruing during the plaintiff's minority until he turned eighteen. Previously, however, the limitations period had been tolled until the minor male turned twenty-one, and so for plaintiffs between the ages of eighteen and twenty-one at the time of these amendments, whose claims had accrued after their eighteenth birthday, the amendments "removed" their legal disability. The

---

5. The district court's reliance on the docket sheet for the date of Wilson's filing was misplaced. For purposes of Fed.R.Civ.P. 3, an action is "commenced" when the complaint is received by the court clerk, not when the court officially enters the filing into the record. *Martin v. Demma,* 831 F.2d 69, 71 (5th Cir.1987). Wilson's complaint was signed and notarized on

October 27, 1989, and he also had a letter from the district court clerk, dated November 2, 1989, directing him to correct his complaint. Thus the action here was "commenced" sometime between those two dates. We need not be precise, however, as in this case we are only concerned with whether Wilson brought his claim within a reasonable time after the 1987 amendment.

*Goodwin* court then decided that for such plaintiffs the amendment should not apply retroactively (meaning the limitations period would have started to run when they turned eighteen, though they could not have expected it at the time). Rather, the limitations period would begin to run from the date when the legislature amended the definition of minority in the Probate Act, as it was this amendment that effectively "removed" the disability of these plaintiffs. 46 Ill.App.3d at 707, 5 Ill.Dec. at 129–30, 361 N.E.2d at 129–30. A few months earlier, the court in *Kitching* had reached the same conclusion, neatly setting out the rule:

> Under the holding of this case all prospective plaintiffs who had not attained the age of 18 before the effective date of the amendment to the Probate Act had or shall have two years from the date of their 18th birthday in which to file suit. All prospective plaintiffs who were between the ages of 18 and 21 when the Probate Act was amended had two years from August 24, 1971 within which to file suit. All plaintiffs whose cause of action accrued while they were minors and who subsequently achieved the age of 21 before the Probate Act was so amended had two years from the date of their 21st birthday to file suit.

45 Ill.App.3d at 557–58, 4 Ill.Dec. at 205, 359 N.E.2d at 1157. The court based this holding on the concept that prospective application of amendments is favored where retroactive application would not leave a plaintiff a reasonable time to file a claim. *Id.* (citing *Hathaway v. Merchant's Loan & Trust Co.*, 218 Ill. 580, 75 N.E. 1060 (1905)).

Wilson relies on these cases for the proposition that any time a legal disability is "removed" the statute of limitations should run prospectively from the date of the amendment. This stretches things too far, as cases like *Goodwin* and *Kitching* are best limited to their unique factual situation. The concerns of *Hathaway* are adequately accommodated by the modern rule guaranteeing plaintiffs a reasonable time to file their claims in the aftermath of an amendment shortening a statute of limitations. While a rule giving all plaintiffs two years from the date of the amendment would have the benefit of certainty, a flexible "reasonable time" approach serves the interest of the legislature in promoting expedient resolution of disputes without unduly restricting prisoners' ability to be heard.

### 3. "Continuing Wrong" Theory

Alternatively, plaintiff contends that his claim did not accrue in this case until December 5, 1989, when the Illinois Supreme Court denied review of his Lee County conviction. His premise is that the defendants committed a "continuing wrong," preventing his claim from accruing until the harm was finalized. *See Page v. United States*, 729 F.2d 818, 821 and n. 23 (D.C.Cir.1984). The defendants did not achieve their goal, plaintiff argues, until his conviction was no longer challengeable.

Aside from the fact that the complaint here would be premature if no cause of action accrued until December of 1989, this argument has other problems. The continuing wrong theory has been used in discrimination cases under Title VII, *Stewart v. CPC International, Inc.*, 679 F.2d 117 (7th Cir.1982), and medical malpractice litigation. *See, e.g. Baughman v. Bolinger*, 485 F.Supp. 1000, 1002 (S.D.Ohio 1980); *see also Taylor v. Meirick*, 712 F.2d 1112 (7th Cir.1983) (applying the doctrine to ongoing copyright infringement). The theory, however, is not suited to cases such as this, where the harm is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress. "The exception as to continuing, ongoing acts does not apply where the alleged tortious acts ... caused direct damages that occurred at a certain point in time—resulting in immediate and direct injury ... with consequential effects." S. Speiser, C. Krause & A. Gans, *The American Law of Torts*, § 5:27 at 890 (1983). If Wilson was harmed, it was due to specific, knowable acts. Nothing in the nature of this case would justify treating the defendants' actions as a "continuing wrong."

### 4. Constitutionality of the Statutory Amendment

■ Plaintiff maintains that the 1987 amendment to paragraph 13–211 was unconstitutional as applied to him. He contends that it effectively denies prisoners their constitutional right to sue their captors, as the fear of retribution will chill them from suing, even as the limitations period is running out. This appears to be essentially an equal protection claim, as Wilson complains that prisoners are treated differently from others under a legal disability. But prisoners are not a suspect class. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985) (stating that heightened equal protection scrutiny applies only to classifications based on race, alienage, national origin, gender, and legitimacy). Therefore the classification in the Illinois statute need only be rationally related to a legitimate governmental interest. *Id.* at 442, 105 S.Ct. at 3255. It is. The government has a legitimate interest in having prisoners bring their claims in a timely manner, promoting the efficient dispensation of justice and relieving IDOC officers and employees from having to defend themselves against stale claims. *Cf. Douglas v. Hugh A. Stallings, M.D., Inc.*, 870 F.2d 1242, 1247–49 (7th Cir.1989) (upholding an Indiana statute shortening a limitations period for malpractice claims). Further, the fundamental right of access to the courts has not been burdened here, as the mere shortening of the limitations period would not have prevented plaintiff from maintaining his claim, had he done so in a timely fashion.

### C. *Lee County*

■ It would seem that the two-year limitations period of paragraph 13–202 should apply to claims against the county as well as against IDOC employees, as the goal of *Wilson v. Garcia* was to insure that a uniform limitations period would govern § 1983 claims no matter who the defendant and regardless of the nature of the claim. 471 U.S. at 279, 105 S.Ct. at 1948–49. But the Illinois tolling provision, which we must apply under *Hardin v.* *Straub*, 490 U.S. 536, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989), continued to toll the statute for prisoners' claims against defendants other than IDOC employees until it was amended as of January 1, 1991. Therefore plaintiff's claim against the county is not time barred, as he filed before he was even released from prison.

His claim still fails, however. A county is liable for depriving an individual's constitutional rights only if the deprivation was the result of the county's official policy, custom, or practice. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Lee County stands accused of conspiring with prison officials to selectively and wrongfully prosecute black inmates. This is a serious allegation and, had Wilson filed a timely complaint, we would look closely to determine whether prison officials had infringed upon Wilson's rights. Lee County, on the other hand, has done nothing but prosecute an inmate accused of possessing a dangerous weapon within an already dangerous environment. Conclusory allegations that the county conspired with IDOC officials will not support a charge of conspiracy. To prove a prima facie case of civil conspiracy under § 1985(3) the plaintiff must show "an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir.1988). We will not infer a conspiracy simply because county prosecutors followed through on a complaint filed by prison officials. Further, a prima facie case also requires an actual deprivation of constitutional rights through overt acts in furtherance of the alleged agreement. Plaintiff does not contest the constitutionality of his trial (apart from claims that prison officials committed perjury), just the fact of his prosecution, and so he has failed to show that any set of facts exists on which he could prevail against the county. Finally, Wilson has not submitted evidence showing that he was injured by an official policy or custom of the county, as required by *Monell*. We do not know whether prosecutors neglected to prosecute white in-

mates charged with similar offenses, or whether prison officials ever filed complaints against such inmates. While prison officials may have carried out a conspiracy by not filing complaints against white inmates, the county would not become a part of that conspiracy simply by prosecuting on the complaints it did receive.

Accordingly, the dismissal of plaintiff's complaint is

AFFIRMED.