33 F.3d 56
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Eric JELINEK, Plaintiff-Appellant,
v.
Thomas ROTH, Kenneth L. McGinnis, Diane Jockish, et al.,
Defendants-Appellees.
 No. 93-3316.
 United States Court of Appeals, Seventh Circuit.
 Argued May 17, 1994.
Decided Aug. 19, 1994.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 93 C 1394, John A. Nordberg, Judge.
 N.D.Ill.
 AFFIRMED.
 BAUER, WOOD, JR. and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Eric Jelinek filed this action against Thomas Roth, Kenneth L. McGinnis, and Diane Jockish under 42 U.S.C. Sec. 1983 alleging cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The district court dismissed the complaint under Fed.R.Civ.P. 12(b)(6) on statute of limitations grounds. We find that dismissal was proper, albeit on other grounds, and therefore affirm.
 
 I. Background
 
 2
 At the start of 1990, Jelinek was incarcerated at Menard Correctional Center where he was assaulted and injured. On March 28, 1990, Jelinek was transferred to the Stateville Correctional Center ("Stateville"). Because he feared for his safety, Jelinek requested that he be placed in protective custody. Thomas Roth, then the Warden at Stateville, chose not to comply with the request and instead placed Jelinek in a building described as "X House." Jelinek lived in X House from March 28, 1990, until April 21, 1991.
 
 
 3
 Jelinek complains that the conditions of his confinement in X House placed him in "extreme physical discomfort." He alleges that the plumbing in his cell was faulty because he could not drink or bathe in the "rusty" water emitted from the faucet, and the toilet often backed up flooding his cell. The cell was also poorly heated and contained loose asbestos hanging from the pipes. Based on these alleged improprieties, Jelinek filed grievances with prison officials and requested a transfer.
 
 
 4
 During the time of Jelinek's confinement,[1] Roth was the Warden of Stateville, McGinnis served as the Director of the Illinois Department of Corrections, and Jockish was the person responsible for coordinating transfers between prisons. The complaint names each of these defendants in their individual capacity and alleges that each defendant refused to correct the conditions or transfer him to another cell, thereby acting in reckless disregard of Jelinek's health.
 
 II. Analysis
 
 5
 Instead of filing an answer, the defendants moved to dismiss Jelinek's complaint on several grounds including: (1) Jelinek's action was barred by the applicable statute of limitations; (2) the complaint failed to state an Eighth Amendment violation; and (3) because the defendants are governmental officials they are qualifiedly immune from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights. The district court dismissed the case as barred by the statute of limitations[2] and Jelinek argues that this was error. The defendants, of course, argue that the district court properly dismissed this case as time barred and again raise the other grounds for dismissal. We find it unnecessary to reach the statute of limitations issue and instead affirm the district court's dismissal because Jelinek's complaint in any event fails to allege a constitutional violation.
 
 
 6
 We review the dismissal de novo and accept all well-pled factual allegations contained in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. Northwest Tissue Ctr. v. Shalala, 1 F.3d 522, 527 (7th Cir.1993). Under Rule 12(b)(6), dismissal is appropriate only if the plaintiff can establish no set of facts upon which relief may be granted. Id.
 
 
 7
 The Eighth Amendment protects prisoners from cruel and unusual punishment and applies to the states through the Due Process Clause of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 666 (1962). To determine whether the Eighth Amendment has been violated, under Wilson v. Seiter, 501 U.S. 294 (1991), we employ a two-part test involving an objective and subjective component. Id. at 298; Lunsford v. Bennett, 17 F.3d 1574, 1579 (7th Cir.1994). We find that neither component is satisfied by the facts alleged in the complaint.
 
 
 8
 In an action based on complaints about the conditions of confinement, the Eighth Amendment is implicated only where a prisoner is deprived of the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner is not entitled to "the amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir.1988). With these general principles in mind, we address each of the individual grievances contained in Jelinek's complaint.
 
 
 9
 First, Jelinek complains that the plumbing in his cell produced only water contaminated with rust that was undrinkable and unsuitable for bathing. This allegation does not implicate the Eighth Amendment. Jelinek does not allege that he was refused drinking water or prevented from bathing. Nothing in the Constitution requires that each prisoner be provided with clean, cold, warm, or any other form of running water in his cell although in recent history some improvements have been made.
 
 
 10
 The complaint also alleges that the toilet in Jelinek's cell often overflowed thus flooding the cell with water contaminated with rust and human waste. When this occurred Roth allegedly allowed Jelinek to remain in the foul-smelling, flooded cell. Although unpleasant, Jelinek does not allege that these conditions persisted long enough to create an unhealthy environment or caused him harm in any way.
 
 
 11
 The most troubling allegations in Jelinek's complaint concerns the presence of loose asbestos, a known carcinogen, in his cell. Specifically the complaint alleges that Jelinek "was constantly exposed to loose asbestos hanging in torn pieces from various pipes." The mere presence of asbestos, however, does not amount to an Eighth Amendment violation. "[E]xposure to moderate levels of asbestos is a common fact of contemporary life and cannot, under contemporary standards, be considered cruel and unusual." McNeil v. Lane, 16 F.3d 123, 125 (7th Cir.1994), citing Meriwether v. Faulkner, 821 F.2d 408, 416 (7th Cir.), cert. denied, 484 U.S. 935 (1987). Although in drawing all reasonable inferences in Jelinek's favor we can infer that Jelinek may have been forced to inhale some asbestos, he does not allege that the asbestos was present in any unreasonable or excessive amounts. Accordingly, we fail to see where Jelinek has been cruelly and unusually punished. In reaching this decision we recognize that asbestos can be dangerous to a person's health if present in large amounts or over an extended period of time, and the state has an obligation to provide a safe environment for prisoners held in custody. Involuntary exposure to asbestos may, in certain circumstances, satisfy the objective portion of the Wilson test. This is not one of them.
 
 
 12
 To meet the subjective portion of the test Jelinek must allege that the defendants were deliberately indifferent to the conditions of his confinement. Rhodes, 452 U.S. at 347. This court has previously defined "deliberate indifference" as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir.1992).
 
 
 13
 "Deliberate indifference" means recklessness in a criminal, subjective sense: disregarding a risk of danger so substantial that knowledge of the danger can be inferred. Such disregard is tantamount to intending that the injury occur. Put another way, recklessness in the context of prisoner safety requires "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it."
 
 
 14
 James v. Milwaukee County, 956 F.2d 696, 700 (7th Cir.), cert. denied 113 S.Ct. 63 (1992), citing McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir.1991), cert. denied, 112 S.Ct. 1265 (1992). The law in this circuit requires that the prison officials have "actual knowledge of impending harm easily preventable." Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir.1985). "To state a claim under the Eighth Amendment, [the plaintiff] must, at minimum, allege facts sufficient to establish that the defendants possessed a total unconcern for McNeil's welfare in the face of serious risks." McNeil v. Lane, 16 F.3d 123, 124 (7th Cir.1994), citing Helling v. McKinney, 113 S.Ct. 2475, 2480 (1993). See also Farmer v. Brennan, 114 S.Ct. 1970, 1978 (1994) (approving the Seventh Circuit's understanding of the mental state required under the Eighth Amendment). According to the complaint, the defendants knew of the above-described conditions and refused to grant Jelinek's multiple requests to be transferred. The complaint further describes the defendants' actions as being in "reckless disregard" of Jelinek's well-being. However, there is no allegation that the defendants knew of any threat posed to Jelinek's health or safety by any of these conditions, and thus it would be impossible for them to be "deliberately indifferent" to his needs.
 
 
 15
 For the foregoing reasons, the order of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Currently Jelinek is incarcerated at the Illinois River Correctional Center
 
 
 [2]
 Applying the Illinois two-year statute of limitations for personal injuries, the district court explained:
 Since plaintiff did not file his complaint until March 8, 1993, defendants argue, the limitations period would curtail his entitlement to file a claim to incidents alleged after March 8, 1991. But statutes of limitation do not work this way; statutes of repose do. A statute of limitations looks forward from the date a claim accrues. Federal law determines the accrual of a claim. Wilson v. Geisen, 956 F.2d 738, 740 (7th Cir.1992). Civil rights claims accrue when the plaintiff knows or should know that his constitutional rights have been violated. Id. In this case, the unsanitary and unhealthful conditions of plaintiff's confinement should have become apparent to plaintiff far before March 8, 1991, and apparently they were, judging by his alleged attempts to request a transfer prior to this date. More than two years have passed since the accrual of plaintiff's claim. It is therefore barred by Illinois statute of limitations.