James NEWSOME, Plaintiff,

v.

Bruce JAMES, James W. Eckner, David Dioguardi, John McCabe, Raymond McNally, Theatrice Patterson, and Olivia Russell, Officers of the Chicago Police Department, Defendants.

No. 96 C 7680.

United States District Court, N.D. Illinois, Eastern Division.

July 1, 1997.

Locke E. Bowman, III, Chicago, IL, for plaintiff.

David Mitchell Zinder, Eileen Ellen Rosen, Kevin Joseph Powers, John F. McGuire, Joseph M. Polick, City of Chicago, Law Dept. Corp. Counsel, for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

James Newsome ("Newsome") spent fifteen years in prison for a murder he did not commit. After his release and pardon, he sued the defendant Chicago police officers under 42 U.S.C. § 1983 ("Section 1983") for their roles in his arrest and prosecution. The defendants have moved to dismiss on a variety of grounds. For the reasons set forth in this memorandum opinion and order, the motion is granted in part and denied in part. In addition, because this Court finds that one of the defendants' arguments was not well-founded in law, the defendants are given fourteen days from the date of this opinion to file an explanation why sanctions in the amount of $1,000 should not be imposed under Fed.R.Civ.P. ("Rule") 11.

### Facts

On Halloween Day in 1979, Newsome, an African–American, helped a friend, Marvin White ("White"), move into a new apartment on the north side of Chicago. Late that night, as they drove through a predominantly white neighborhood, they were stopped and arrested at gunpoint by Officer Bruce James ("James") and other officers of the Chicago Police Department ("CPD") for the robbery of prostitute Shirley Wills ("Wills"), despite the fact that Wills had told police that her purse had been taken by a lone African–American male who fled down an alley on foot. In a report filed two days later, the police officers claimed that two unidentified African–American men had stopped them on the street and told them that the perpetrator of the Wills robbery had gotten into a car with the same license plate number as Newsome's.[1]

Newsome and White were taken in handcuffs to the 23rd District police station. The police were unable to locate Wills, so no charges could be brought against Newsome and White for the Wills robbery. At that point Officer James Eckner ("Eckner") claimed to notice a resemblance between White and a composite sketch of the suspect in the murder of Edward Cohen ("Cohen"). Cohen had been shot the death the day before in his grocery store on the south side of Chicago by an African–American male. Based on information from two eyewitnesses, Josie Nash ("Nash"), an employee of Cohen's, and Anthony Rounds ("Rounds"), a customer, a police artist had created a sketch of a young African–American male with natural hair. The police had also learned from Nash and Rounds that the suspect was about 5'9" tall, weighed about 145 pounds and was approximately 28 to 30 years old.

Eckner questioned White about the Cohen murder and learned that White lived on the north side of Chicago, many miles from the scene of the murder. Eckner then claimed to notice a resemblance between the sketch and Newsome, who lived only a mile from Cohen's store. When Eckner learned that. Newsome was told that he was a suspect in Cohen's murder, despite the fact that he was several years younger than the age of the suspect, was taller than the suspect and had a mole on his nose, which did not appear on the sketch.

Detective David Dioguardi ("Dioguardi") came to the 23rd District police station and attempted to interview Newsome about the Cohen murder, but Newsome refused to talk to him, invoking his right to remain silent. Dioguardi later testified falsely that Newsome had discussed his alibi with him.

Newsome was then transported by Dioguardi, Detective John McCabe ("McCabe") and Detective Raymond McNally ("McNally") to Area Two Violent Crimes Headquarters. There he was forced to participate in a line-up viewed by Nash, despite the fact that on the day of Cohen's murder Nash and

---

1. Newsome alleges that the car, registered to his father, had been nowhere near the location of the Wills robbery.

Rounds had positively identified as the killer the photograph of someone else from a mugshot book. Newsome had never been arrested by the CPD, and his photograph did not appear in any CPD mugshot book. Newsome alleges that Dioguardi, McCabe and McNally knew when they arranged for the line-up that Nash and Rounds had already identified someone other than Newsome as Cohen's murderer. Newsome also alleges, on information and belief, that Rounds did not personally view the line-up, that an unidentified police officer impersonated Rounds there, and that both Rounds and the detectives later testified falsely that Rounds had identified Newsome during the line-up. Newsome further alleges that the defendants deliberately suggested to Nash that she should identify Newsome, which she did.

After the line-up, Newsome was told that the witnesses had positively identified him as the killer and that his fingerprints had been found at the scene. The latter fact was untrue, for although the killer had left a number of high quality prints on items in the grocery store, they did not match Newsome's. Newsome alleges that he was told these things in an effort to get him to confess to the Cohen murder.

Newsome was tried for murder and armed robbery in September 1980. Although the fingerprints found at the scene did not match Newsome's, based on the testimony of Nash and Rounds, Newsome was convicted. The prosecutors sought the death penalty, but Newsome was instead sentenced to natural life in prison.

Newsome was incarcerated in various maximum security prisons in Illinois. In May 1989, after learning that the CPD had acquired the Automated Fingerprint Identification System ("AFIS") in 1986, Newsome, through his attorney, obtained a court order requiring the CPD to run the fingerprints found at the Cohen murder scene through the AFIS. Officers Theatrice Patterson ("Patterson") and Olivia Russell ("Russell") were responsible for running the search. The reported result was that the fingerprints did not match any on the AFIS.

More than five years later, on November 24, 1994, Patterson admitted to Newsome's attorney that the Cohen crime scene fingerprints matched those of Dennis Emerson. Emerson's prints had been logged onto the AFIS in 1986, three years before the search was run. Both the prints from the Cohen murder scene and Emerson's prints in the AFIS were of good quality. Emerson had been arrested by the CPD for another crime two and one-half months after Cohen's murder and months before Newsome was tried. At the time of his arrest, Emerson had a loaded .38 caliber revolver, the same type of weapon used in the Cohen murder. He was subsequently convicted of another murder and is now on Death Row.

On December 6, 1994, Newsome's motion to vacate his conviction was granted, and he was released to home confinement. On January 4, 1995, the Cook County State's Attorney's Office informed the Circuit Court of Cook County that it would not attempt to retry Newsome. On that date he was released from all further custody. On July 14, 1995, Governor James Edgar granted him a full pardon on the ground that he was innocent of the Cohen murder and directed that his conviction be expunged.

Newsome filed this action on November 22, 1996.

### Discussion

On a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint must be credited, with all reasonable inferences drawn in the plaintiff's favor. *See, e.g., Sherwin Manor Nursing Ctr., Inc. v. McAuliffe,* 37 F.3d 1216, 1219 (7th Cir. 1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 172, 133 L.Ed.2d 113 (1995). A complaint may be dismissed only if it is clear that no set of facts consistent with its allegations would entitle the plaintiff to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

I. *Claims Against the Defendants in Their Official Capacities*

The defendants' first argument is that Newsome's claims against the defendants in

their official capacities must be dismissed because they are in fact claims against the City itself. In response Newsome acknowledged that fact and indicated that he is pursuing his claims against the defendants in their individual capacities only.

## II. Count I—Malicious Prosecution under Section 1983

The defendants argue that Count I must be dismissed to the extent it states a claim for arrest without probable cause because, while the statute of limitations for such a claim under Section 1983 is two years, Newsome did not file this case until more than seventeen years after his arrest. In response Newsome asserts that Count I states a claim for malicious prosecution, not false arrest. And in reply the defendants, asserting that Newsome has misunderstood their argument, again contend that Count I must be dismissed to the extent it states a claim for false arrest.

It is the defendants who misunderstand, not Newsome. There is no claim for false arrest in Count I, and so there is nothing to dismiss. Newsome's response should have laid the defendants' argument to rest.

■ The defendants next argue that Count I must be dismissed because no malicious prosecution claim exists under Section 1983. They point out that in *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the Supreme Court held that substantive due process does not provide a constitutional basis for a federal claim of malicious prosecution and left open the question of what constitutional amendment is implicated by such a claim. Then, relying upon the Seventh Circuit's rejection of the "continuing seizure" concept in *Wilkins v. May*, 872 F.2d 190 (7th Cir.1989). *cert. denied*, 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990), they assert that a federal malicious prosecution claim cannot be brought under the Fourth Amendment either. Further, they note that the Seventh Circuit recently reiterated its holding in *Wilkins* in *Reed v. City of Chicago*, 77 F.3d 1049 (7th Cir.1996). Thus, they say, there is no constitutional

basis for such a claim, and so Count I must be dismissed for failure to state a claim. They acknowledge in a footnote that this Court rejected the same argument in *Seaton v. Kato*, 1995 WL 88956 (N.D.Ill. March 1, 1995), and that it has been rejected in five other cases in this district as well. But, they point out, all of those decisions were decided before *Reed*.

What the defendants omit to say is that in both *Reed* and *Smart v. Board of Trustees*, 34 F.3d 432 (7th Cir.1994) (a case also decided after *Albright*), the Seventh Circuit unambiguously recognized a federal claim for malicious prosecution under the Fourth Amendment, the *Wilkins* problem notwithstanding. In *Smart* the court reasoned:

> If malicious prosecution or abuse of process is committed by state actors and results in the arrest or other seizure of the defendant, there is an infringement of liberty, but we now know that the defendant's only constitutional remedy is under the Fourth Amendment (as made applicable to the states by the Fourteenth), and not under the due process clause directly.

*Id.* at 434. And in *Reed* the court stated:

> To state a claim for malicious prosecution under section 1983, a plaintiff must demonstrate that: (1) he has satisfied the requirements of a state law cause of action for malicious prosecution: (2) the malicious prosecution was committed by state actors, and (3) he was deprived of liberty.

*Id.* at 1051. The court would hardly have included such language if no federal malicious prosecution claim existed.

It is true enough that in *Reed* the Seventh Circuit recognized the apparent conflict between the use of the Fourth Amendment as the source of a federal malicious prosecution claim and *Wilkins'* rejection of the "continuing seizure" concept. There it explained that in deciding *Wilkins*, it had thought that the Fourth Amendment ceased to apply when a hearing was held to determine that an arrest had been made with probable cause (a *Gerstein*[2] hearing), and that substantive due process governed claims of malicious prosecution based on the government's treatment

---

**2.** *Gerstein v. Pugh*, 420 U.S. 103, 126, 95 S.Ct. 854, 869, 43 L.Ed.2d 54 (1975).

of a suspect between arrest and acquittal or dismissal of the charges. *Id.* at 1052. But, the court noted, that analysis had been turned on its head by *Albright. Id.*

As *Reed* noted, *Albright's* impact on *Wilkins* was acknowledged in *Garcia v. City of Chicago,* 24 F.3d 966, 971–72 n. 6 (7th Cir. 1994), *cert. denied,* 514 U.S. 1003, 115 S.Ct. 1313, 131 L.Ed.2d 194 (1995), in which, although the court reiterated *Wilkins,* it stated that the Supreme Court's analysis in *Albright* left "considerable doubt [as to] the applicability of substantive due process" to post-*Gerstein* hearing conduct. *Reed,* 77 F.3d at 1052. In addressing *Smart,* the *Reed* court recognized that *Garcia* had not been cited there and that the decision did not reach the "continuing seizure" question. *Id.* The *Reed* court noted that the district court in the case before it had concluded based on *Garcia* and *Albright* that there was no malicious prosecution claim under the Fourth Amendment, the same argument the defendants make here. *Id.* at 1052–53. But it explained:

> We acknowledge that the district court's reading of each of these case in the abstract seems correct. However, reading them in context suggests that the district court's analysis is incorrect because it implies that *Garcia* held that there is no remedy for a post-*Gerstein* hearing malicious prosecution claim. However, this results in the same "gap in constitutional protection" that we sought to eliminate in *Wilkins* ...

*Id.* at 1053. Ultimately, the court concluded that it need not decide the issue of the constitutional basis of a federal malicious prosecution claim because the plaintiff's claim was actually one for arrest without probable cause. *Id.*

■ As this discussion makes amply clear, both *Reed* and *Smart* recognized the existence of a federal malicious prosecution claim, and the defendants' motion to dismiss must be denied on that issue. In arguing otherwise the defendants omitted the relevant language in *Reed,* from which they instead cited only language favorable to their position (which was taken out of context), and they did not cite *Smart* at all. In short, they affirmatively misrepresented the current state of the law by failing to acknowledge controlling precedent, by which this Court is bound. That is an impermissible strategy under Rule 11. While they were free to argue that a federal claim of malicious prosecution should not exist in this circuit because of the conflict between using the Fourth Amendment as the source of the claim and *Wilkins'* rejection of the "continuing seizure" concept, they were not free to argue, as they did, that the claim does not currently exist. It is possible that the Seventh Circuit will someday adopt their reasoning, but *Reed* makes it abundantly clear that it has not done so yet, a distinction not acknowledged by the defendants.[3] In fact, *Reed* criticized the same argument the defendants' make here and suggested the court is uncomfortable with the gap in constitutional coverage that it implies. The defendants were required by Rule 11 to bring those aspects of *Reed* to this Court's attention.

The footnote citation to this Court's opinion in *Seaton v. Kato* and other opinions from this district does not bring their strategy within Rule 11. They have an obligation to acknowledge controlling Seventh Circuit precedent that citation to adverse district court decisions does not fulfill. Moreover they concluded the footnote by noting that all the cited decisions had been issued before *Reed,* which implied (as did their argument itself) that *Reed* had held that no federal malicious prosecution claim exists. But they omitted citations to those district court decisions decided after *Seaton* in which their argument was squarely rejected on the basis of either *Smart* or *Reed* (or both) *See Tribblet v. Sanchez,* 1997 WL 106303, at * 2 (N.D. Ill. Feb. 12, 1997) (Conlon, J.); *Blair v. Disotaur,* 1997 WL 49212, at *3–4 (N.D. Ill. Jan 31, 1997) (Hart, J.); *Schoenhorn v. City of Chicago,* 1996 WL 521398, at *9 (N.D.Ill. Sept. 11, 1996) (Nordberg, J.); *Lorenzana v. Mette,* 1995 WL 461860, at * 3 (N.D. Ill. Aug

---

3. It is also possible that to resolve the conflict and preserve constitutional protection for the period between arrest and acquittal, the court will overrule *Wilkins* and adopt the "continuing seizure" concept.

2, 1995) (Coar, J). The defendants cited no decision from this district in which their argument has been accepted (except for *Reed* itself, where it was criticized), and this Court's own research has uncovered none.

With the exception of *Jiminez* and *Blair*, in each of these cases the argument has been advanced by attorneys from the Corporation Counsel's office of the City of Chicago on behalf of Chicago police officer defendants. In *Seaton v. Kato*, we warned defense counsel that the argument violated Rule 11. 1995 WL 88956, at *6. Seaton was issued in 1995, and since then *Reed* and the four district court decisions cited above have been issued.

At this point it is clear that defense counsel knows or should know its argument is not well-founded in law, for it has been told so repeatedly, and no court has ever agreed with it (with the sole exception of *Reed*, where the Seventh Circuit criticized it). There is certainly value to preserving the argument for appeal, but that should have been accomplished by making a good faith argument for an extension of the law, which is a permissible tactic under Rule 11, not by misrepresenting the current law, which is an impermissible one. Defense counsel is therefore given fourteen days from the date of this opinion to explain why sanctions in the amount of $1.000 should not be imposed.

■ The defendants also argue that the malicious prosecution claim must be dismissed as to James and Eckner because they were not personally involved in the prosecution of Newsome and his claim against them is really one for false arrest. James is alleged to have lacked probable cause to arrest Newsome for the robbery of Wills and to have fabricated a reason for that arrest. Eckner is alleged to have falsely claimed to notice a resemblance between Newsome and the composite sketch of the suspect in Cohen's murder.

We agree with the defendants that Newsome's claim against James is for false arrest

rather than malicious prosecution.[4] The wrongful conduct at issue there is that James lacked any reason to believe that Newsome had committed the Wills robbery when James arrested him. The arrest merely placed Newsome at the police station where Eckner then claimed to think that Newsome might have murdered Cohen, but it was not a proximate cause of the malicious prosecution for Cohen's murder. Newsome has not alleged that James' real motive in arresting Newsome was to have him charged with the Cohen murder or that James and Eckner cooked up the plan to finger Newsome for the murder to cover up James' lack of probable cause in arresting him for the Wills robbery. Because the chain of causation was broken, Newsome does not state a claim against James for malicious prosecution.

■ Eckner is another matter however. Eckner's conduct occurred after Newsome's arrest for Wills' robbery, and his claim that he noticed a resemblance between the sketch of Cohen's murderer and Newsome did start the ball rolling in the unwarranted prosecution of Newsome for that crime. Newsome's malicious prosecution claim against him is viable.

### III. *Count II—Conspiracy under Section 1983*

■ The defendants argue that Count II must be dismissed because all of the overt acts alleged occurred beyond the two-year statute of limitations for Section 1983 actions and because the defendants have absolute immunity for their testimony before a grand jury, at a hearing on a motion to suppress and at trial.

■ A civil conspiracy claim accrues " 'when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.' " *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir.1992) (quoting *Scherer v. Balkema*, 840 F.2d 437, 440 (7th Cir.1988)).[5] Here Newsome's con-

---

4. Newsome asserts in his response brief that James also testified at a hearing on Newsome's motion to quash his arrest and at his trial. A plaintiff may not cure gaps in the factual allegations of a pleading in a Rule 12(b)(6) brief. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

1107 (7th Cir.1984). Hence we do not consider those additional facts.

5. Although state law determines the limitations period for Section 1983 actions, *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85

spiracy claim is based upon the defendants' actions in malicious prosecuting him. A claim for malicious prosecution does not accrue until a wrongful conviction is invalidated. *Heck v. Humphrey,* 512 U.S. 477, 489, 114 S.Ct. 2364, 2373–74, 129 L.Ed.2d 383 (1994). Here Newsome's conviction was invalidated on the date that charges against him were dropped, *i.e.,* on January 4, 1995. He could not have recovered damages for the malicious prosecution until that date, and so his claim for conspiracy based on malicious prosecution did not accrue until then either. Because he filed this action less than two years later, his conspiracy claim is timely.

[8] The defendants next contend that they are entitled to absolute immunity for their testimony in pretrial proceedings and at trial. As a general principle, they are correct. However, Newsome is not seeking to hold them liable for perjury; he is suing them for malicious prosecution. Newsome has alleged that Dioguardi falsely testified both that Newsome had discussed his alibi with him and (alleged on information and belief) that the witness Rounds had seen the line-up when he had not. But Newsome also has alleged that Dioguardi participated in staging a sham line-up, which led the two eyewitnesses to Cohen's murder to later testify that they had identified Newsome as the killer in that line-up. Consequently, it is not Dioguardi's own allegedly false testimony but his participation in a scheme to fabricate the testimony of the eyewitnesses (without which Newsome asserts he would not have been convicted), as well as the other conduct alleged in the amended complaint, that are the real issue.

Except for the allegations as to Dioguardi, Newsome has not alleged false testimony by any of the defendants. Of course he is not required under Rule 8(a) to allege all of the facts supporting his claim, and it is possible that there are other instances. Should the evidence adduced during discovery suggest that he is seeking to hold a defendant liable solely for testimony for which the defendant has absolute immunity, the issue may be

L.Ed.2d 254 (1985), federal law determines when a Section 1983 action accrues. *Wilson v. Giesen,*

raised on summary judgment. The defendants' motion to dismiss is denied on this issue.

## IV. *Count IV—Due Process Violation*

[9] Finally the defendants assert that Count III must be dismissed because it fails to state a claim and is time-barred. In that count Newsome alleges that he had a liberty or property interest in good faith compliance with the May 1989 order requiring the CPD to run the fingerprints found at the scene of the Cohen murder through the AFIS system, and as a result of Patterson's and Russell's failure to comply with the order in good faith, he spent an additional five years in prison. He also alleges that the conduct at issue violated his Fifth and Fourteenth Amendment rights.

The defendants assert that Newsome has no claim under the Fifth Amendment because it applies only to federal actors, not state actors. They also contend that Newsome has no claim under the Fourteenth Amendment because in *Wilkins* the Seventh Circuit held that the Eighth Amendment, not the Fourteenth, applies after conviction. The first assertion is certainly true. The second is specious in this context, for *Wilkins* addressed only the amendment under which inmates could challenge the constitutionality of their treatment while in confinement after conviction. *Wilkins,* 872 F.2d at 193. It certainly did not hold, however, that convicted inmates have no rights under the due process clause. and many cases have held that they do, *See, e.g., Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). Count III will not be dismissed on this issue.

[10] The defendant also contend that Newsome's claim is time-barred because the statute of limitations for Section 1983 actions is two years. But Newsome's allegations indicate that he had no reason to believe that the CPD's original response to the May 1989 order was inaccurate until November 24, 1994, when Patterson admitted that the fin-

956 F.2d at 740.

gerprints from the crime scene matched those of Dennis Emerson found in the AFIS. As a result, he had no reason to know that he had been injured by the manner in which the AFIS search was done until November 1994. Under the federal discover, rule applicable to Section 1983 actions, *Cathedral of Joy Baptist Church v. Village of Hazel Crest,* 22 F.3d 713, 717 (7th Cir.), *cert. denied,* 513 U.S. 872, 115 S.Ct. 197, 130 L.Ed.2d 129 (1994), his claim is therefore timely.

In their reply brief, the defendants argue that Count III must be dismissed under Rule 8(a) because it is not clear what Newsome's Fourteenth Amendment claim is. They assert that they thought he was raising a substantive due process claim, while his response indicates it is a procedural due process claim. But Newsome did not say in his response that he was asserting a procedural due process claim, and there is nothing in his argument that suggests that he is.[6] Moreover Rule 8(a) does not require a plaintiff to identify the legal theory behind each claim, *Shannon v. Shannon,* 965 F.2d 542, 553 (7th Cir.), *cert. denied,* 506 U.S. 1028, 113 S.Ct. 677, 121 L.Ed.2d 599 (1992), and it is beyond argument that Count III sets forth sufficient facts to put Patterson and Russell on notice as to the substance of Newsome's claim against them.

Because we conclude that Newsome is not asserting a procedural due process claim, we need not address the defendants' argument in reply that his claim is barred by *Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981).

### Conclusion

For the reasons set forth above, the defendants' motion to dismiss the amended complaint is granted as to Count I against James, who is dismissed from that count with prejudice. The motion is denied on all other issues.

---

**6.** In this regard the defendants have not identified that part of Newsome's response that indi-
cates he is asserting a procedural due process claim.